803 So.2d 1106 (2001)
Umeki WILSON
v.
ST. MARY COMMUNITY ACTION and Louisiana Workers' Compensation Corporation.
No. 2000 CA 2106.
Court of Appeal of Louisiana, First Circuit.
December 28, 2001.
*1108 William R. Mustian, III, Metairie, LA, for plaintiff/appellee, Umeki Wilson.
Merilla B. Miller, Baton Rouge, LA, for defendants/appellants, St. Mary Community Action and Louisiana Workers' Compensation Corporation.
BEFORE: FITZSIMMONS and DOWNING, JJ., and WALTER I. LANIER, J. Pro Tem.[1]
WALTER I. LANIER, JR., J. Pro Tem.
Defendants, St. Mary Community Action (St.Mary) and Louisiana Workers' Compensation Corporation (LWCC), appeal a ruling by the workers' compensation judge in favor of plaintiff, Umeki Wilson. The judgment awarded recovery of supplemental earnings benefits from November 4, 1999, to the present, subject to a credit for compensation paid, authorized cervical and lumbar surgeries recommended by the *1109 treating physician, and awarded penalties and attorney fees.
Appellants allege the lower court erred in awarding supplemental earnings benefits based upon a zero wage earning capacity. Appellants additionally assign as error the authorization of surgical procedures that had not been previously denied. A third assignment of error alleged the award of penalties and attorney fees was inappropriate.
For reasons that follow, we affirm the ruling of the workers' compensation judge.

FACTS AND PROCEDURAL BACKGROUND
Review of the record indicates Ms. Wilson was employed by St. Mary. She began working for her employer in 1992 as an aid in the head start program and advanced to the position of head start secretary/administrative assistant, the position she held on the date of her injury.
Ms. Wilson was injured when she slipped and fell at work on a floor which had been recently waxed. She sustained injuries to her neck and back in the fall. Ms. Wilson was treated at Teche Action Clinic immediately following the accident. She continued to see Dr. Gary Wiltz, a general practitioner, and consulted Dr. Douglas A. Bernard, an orthopedist, in New Iberia. Ms. Wilson began treatment with Dr. John Watermeier, an orthopedist, on May 3, 1999, and has continued treatment with him since that time. Dr. Randall D. Lea was appointed by the Office of Workers' Compensation Medical Services to perform an independent medical examination of Ms. Wilson on February 2, 2000.
Ms. Wilson received temporary total disability benefits from the date of the accident until benefits were terminated on November 4, 1999. She filed a disputed claim for compensation benefits on November 10, 1999, seeking reinstatement of benefits, approval of surgery as recommended by Dr. Watermeier, and penalties and attorney fees. The matter was originally scheduled for trial on the merits on May 17, 2000, but was continued. As a result of the continuance, the parties agreed that Ms. Wilson's benefits would be reinstated effective May 17, 2000, until the trial. Trial on the merits was held on July 21, 2000. The parties were given until July 28 to submit post trial memoranda. Judgment in favor of Ms. Wilson was read and signed on August 3, 2000. St. Mary and LWCC filed a petition for a suspensive appeal on August 22, 2000. The order granting the appeal and setting the bond was signed on August 23, 2000.

DISCUSSION
At the time of trial, the parties stipulated that Ms. Wilson was injured in an accident which occurred while in the course of and arising out of her employment on September 28, 1998; that temporary total disability benefits were paid through November 4, 1999, at which time benefits were terminated; and that benefit payments were resumed on May 17, 2000. The parties also stipulated that Ms. Wilson's average weekly wage at the time of injury was $412 and that the compensation rate was $274.66 per week.
The issues to be decided at trial were: (1) was Ms. Wilson disabled beyond November 4, 1999; (2) the extent of any disability; (3) was she entitled to the surgeries as recommended by her treating physician; and (4) were penalties and attorney fees warranted.
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether *1110 the factfinder's conclusion was a reasonable one. Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Thus, if the factfinder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, pp. 7-8 (La.7/1/97), 696 So.2d 551, 556.
An employee who is not entitled to receive either temporary total or permanent total disability may be eligible to receive supplemental earnings benefits. To recover workers' compensation supplemental earnings benefits, an employee must prove he has been injured in a work-related accident, which rendered him disabled from earning ninety percent or more of his former earnings. LSA-R.S. 23:1221(3). The question of whether plaintiffs injury prevents him from obtaining employment earning ninety percent of his pre-injury wages is a question of fact which an appellate court may not set aside absent manifest error. Morris v. Norco Construction Company, 632 So.2d 332, 335 (La.App. 1 Cir.1993), writ denied, 94-0591 (La.4/22/94) 637 So.2d 163.
It was stipulated by the parties that Ms. Wilson's average weekly wage was $412, which calculates to $1,771.60 a month. Therefore, in order to be entitled to supplemental earnings benefits, plaintiff had to prove by a preponderance of the evidence that she was unable to earn $1,594.44 a month, 90% of her average monthly pre-injury wage.
Ms. Wilson testified that she was unable to return to her former employment. She stated that she experienced pain on a daily basis and was unable to sit for extended periods of time. Additionally, she takes Lortab for the pain which causes drowiness. Ms. Wilson believed this would cause problems with concentration and her ability to interact with the public, two major requirements of her position. Ms. Wilson testified that her job required long periods of time before the computer. Since she is unable to sit for prolonged periods, this would also present significant challenges. Additionally, her former position required some travel which she could no longer do. She testified that she had discontinued driving because of the side effects of the pain medication.
Once the employee has satisfied the burden of proving an inability to earn ninety percent of the prior salary, the employer may then preclude an award of supplemental earnings benefits by proving that the employee is physically able to perform work that was offered to him or that was available in the employee's or employer's community or a reasonable geographic location. Spencer v. Gaylord Container Corporation, 96-1230, pp. 6-7 (La.App. 1 Cir. 3/27/97), 693 So.2d 818, 823; Fontenot v. Trans Gulf, Inc., 95-0342, pp. 10-11 (La.App. 1 Cir. 11/9/95) 664 So.2d 1238, 1246; Morris v. Norco Construction Company, 632 So.2d at 334.
An employer may discharge the burden of proving job availability by establishing, at a minimum, the following, by competent evidence: (1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region; (2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and, (3) an actual position available for that particular job at the time that the claimant received notification of the job's existence. Banks v. Industrial *1111 Roofing & Sheet Metal Works, Inc., 96-2840 at 10-11, 696 So.2d at 557.
Review of the testimony at trial indicated that the employer offered Ms. Wilson her former position. The employer was aware that she was unable to lift things, therefore, accommodations for that aspect of her former job were to be arranged. Although her supervisor testified that they would have made adjustments for Ms. Wilson to work fewer hours and would have altered her schedule and responsibilities, the only communication to Ms. Wilson was that she could return to her former position (a job she was unable to perform within the limitations set by her physician). The supervisor testified that it would have been difficult for Ms. Wilson to perform her job duties if she were able to work only four hours a day.
The evidence supports a finding that Ms. Wilson was unable to return to her former employment. Even with the concessions her employer admitted it could make, she could not perform even a sedentary job for a regular work day. The employer provided no evidence to indicate that a job within Ms. Wilson's limited capabilities was available to her. The employer failed to meet its burden of proof. Since Ms. Wilson is unemployed, the workers' compensation judge was correct in finding that she is entitled to supplemental earnings benefits calculated with a zero earning capacity. See Peveto v. WHC Contractors, 93-1402, pp. 6-7 (La.1/14/94), 630 So.2d 689, 693.
In light of the evidence presented in the record, we cannot say that the workers' compensation judge's findings were manifestly erroneous or clearly wrong. Moreover, because the record supports the judge's finding that St. Mary failed to establish Ms. Wilson's earning capacity, the judge was correct in awarding supplemental earnings benefits calculated with a zero earning capacity.
Appellants also allege error on the part of the workers' compensation judge in authorizing surgery as recommended by Dr. Watermeier arguing that an award for benefits for surgery are premature because surgery had neither been requested nor denied.
The disputed claim for compensation filed by Ms. Wilson specifically requested authorization for surgery recommended by Dr. John Watermeier. Review of the record reveals the answer filed by appellants alleged the surgery was not medically necessary. Therefore, the issue regarding surgery was before the workers' compensation judge.
The deposition testimony of Dr. John Watermeier was entered into evidence at the trial. He indicated that following a discogram completed on March 10, 2000, he recommended a three-level anterior cervical fusion. His diagnosis at the time of the deposition was cervical and lumbar disc syndrome. On March 17, 2000, Ms. Wilson had a myelogram and CAT scan and a lumbar spine myelogram. Those tests showed bulging discs at the L4-5 and L5-S1 levels. At the time of the deposition, Dr. Watermeier recommended surgery for her neck and had recommended further tests for her back. He also recommended that Ms. Wilson try to lose some weight for her back.
In a workers' compensation case, whether an action is defined as premature is stated in LSA-R.S. 23:1314. However, the procedure provided by the statute only applies to that part of the litigation which takes place prior to the rendition of a judgment. See LSA-R.S. 23:1314. The general rule applicable to a prematurely filed petition is set forth in Code of Civil Procedure article 926, which states that the objection of prematurity must be raised in a dilatory exception, and Code of Civil Procedure article 928, which provides *1112 that a dilatory exception shall be pleaded prior to or in the answer, or prior to the confirmation of a default judgment. Perot v. Link Staffing Services, 99-229, p. 6 (La. App. 3 Cir. 6/23/99), 744 So.2d 80, 84-85, writ not considered, 99-2247 (La.11/5/99), 751 So.2d 230. By not filing a timely dilatory exception raising the objection of prematurity, the defendants waived the exception.
The final assignment of error addresses penalties and attorney fees. Appellants argue that penalties and attorney fees are not warranted because plaintiffs claim was reasonably controverted.
During the time Ms. Wilson was receiving worker's compensation, she was seen for evaluation by two doctors for LWCC, Dr. Jeffrey C. Fitter and Dr. G. Gregory Gidman. Dr. Fitter examined Ms. Wilson once on January 20, 1999, approximately four months after the accident. It was his impression that she suffered a cervical and lumbosacral strain and could return to work in a supervisory capacity following an additional month to six weeks of physical therapy. He expected that she may be symptomatic beyond that point but should gradually improve with time.
Ms. Wilson was seen by Dr. Gidman for a second medical opinion on June 22, 1999. He reviewed diagnostic tests performed during October and December 1998. The results were within normal range. His diagnosis was a cervical and lumbosacral contusion. He indicated that Ms. Wilson should be encouraged to return to light activities at work. She should avoid lifting medium to heavy loads, avoid repetitive prolonged forward, stooped positions and repetitive bending or long-lasting unchanged positions.
At the time benefits were terminated on November 4, 1999, the claims adjuster testified that it was her belief that Ms. Wilson could return to full-time work with her employer. She basically relied on the reports from Dr. Fitter and Dr. Gidman and a letter from Dr. Watermeier dated August 4, 1999, in which he conceded that Ms. Wilson had reached maximum medical improvement if the recommended diagnostic tests and treatment were not approved. It was his impression she could perform sedentary to light duty work at that time. The record reveals, however, that Dr. Watermeier listed Ms. Wilson's disability status as total temporary from the first visit on May 3, 1999, well beyond the date disability benefits were terminated. He recommended further diagnostic testing but had difficulty obtaining approval.
The workers' compensation judge, after careful consideration of all the evidence, awarded penalties and attorney fees for discontinuance of benefits. Whether an employer's refusal to pay workers' compensation benefits warrants the imposition of penalties and attorney's fees is a factual question which will not be disturbed on appeal in the absence of manifest error. Henderson v. New Medico Associates, Inc., 95-0488, p. 9 (La.App. 1 Cir. 11/9/95), 667 So.2d 1094, 1099, writ denied, 96-0505 (La.4/8/96), 671 So.2d 338.
The assessment of penalties is determined by inquiring whether the employer or its insurer has "reasonably controverted" the compensation claims. LSA-R.S. 23:1201(E); Henderson v. New Medico Associates, Inc., 95-0488 at 9, 667 So.2d at 1099.
As noted by this court in Gordon v. Sandersons Farms, 96-1587 (La. App. 1 Cir. 5/9/97), 693 So.2d 1279, an employer has a continuing duty to fully investigate an employee's medical status before terminating benefits. Compensation benefits may not be terminated based on inconclusive medical reports. An employer or insurer must make reasonable efforts to ascertain the employee's exact medical condition before terminating benefits. Termination of benefits may be considered *1113 arbitrary when it appears further medical information was required to make an exact determination of the employee's condition. This obligation is continuing in nature. If an insurer or employer first receives an optimistic medical report, but later receives information indicating the possibility of continuing disability, it may not blindly rely on the earlier report to avoid penalties and attorney fees. Collins v. Family Dollar Stores, Inc., 99-0622, p. 8 (La.App. 1 Cir. 5/12/00), 760 So.2d 1210, 1216, writs denied, 2000-2356, 2000-2363 (La.11/13/00), 773 So.2d 727; Gordon, 96-1587 at 10-11, 693 So.2d at 1286-87.
An independent medical examination performed by Dr. Randall D. Lea on February 2, 2000, indicated that Ms. Wilson could participate in part-time, sedentary-type activity. At that time he indicated she should be capable of working four hours a day locally.
In March of 2000 Ms. Wilson underwent testing which included a discogram and a myelogram and CAT scan. Following the tests, Dr. Watermeier recommended a three level anterior cervical fusion. The results of the myelogram indicated bulging discs at two levels, L4-5 and L5-S1. The employer did not reconsider the decision to terminate benefits. Because of the employer's continued obligation to investigate and evaluate Ms. Wilson's condition, we cannot say the workers' compensation judge was manifestly erroneous in the decision to award penalties and attorney fees.

CONCLUSION
For the foregoing reasons, the decision of the workers' compensation judge is affirmed. Costs of the appeal are assessed to defendants/appellants.
AFFIRMED.
NOTES
[1] The Hon. Walter I. Lanier, Jr., Judge (retired), First Circuit Court of Appeals, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.