MOORE, J.
 

 hThe employer, Hollywood Casino (now known as Eldorado), appeals judgment finding that Linda Thomas sustained the occupational disease of carpal tunnel syndrome (“CTS”) in both hands, denying its defense of fraud and exception of prescription, and assessing penalties of $8,000 and attorney fees of $15,000. Ms. Thomas answers the appeal, seeking additional attorney fees for handling the appeal. We affirm the judgment and award an additional attorney fee.
 

 Factual Background
 

 Ms. Thomas was employed as a chef for Hollywood at an average weekly wage of $336.40. Through Hollywood, she bought a short-term disability policy from American Fidelity Assurance Company which would pay certain benefits if she sustained an accident that was not work-related.
 

 Ms. Thomas began work in January 2001 and described her job as preparing food for the buffet, which required “constant work, constantly doing things with my hands.” In April 2002, she began having pain and swelling in both hands (more pronounced in the right), bad enough to wake her up at night. She went to a Dr. Brouillette in February 2003, but did not tell him she thought the condition was work-related. He prescribed Vioxx, which she said did not help much. On March 23, she went to the Willis-Knighton Bossier emergency room and again told nobody that it might be work-related. That same day, she applied for two weeks’ FMLA leave, saying only that she needed some time off.
 

 She went to an orthopedic surgeon, Dr. Marion Milstead, on April 3, 2003, reporting symptoms of a year’s duration. He diagnosed multiple ^trigger fingers and CTS, told her to stay off work for a week, and placed her on conservative treatment. In an attending physician’s statement of April 7, he checked off that the disability did
 
 not
 
 arise out of or in the course of employment. He signed a back-to-work slip on April 17, with restrictions against repetitive work and holding vibrating objects.
 

 Ms. Thomas continued working through the summer, but EMG results in July showed advanced CTS with denervation (loss of nerve function) in both hands. On this information, Dr. Milstead recommended surgery to decompress the nerves, the right hand first. Ms. Thomas applied for another two weeks’ FMLA leave beginning August 19, which was in fact her final day of work at Hollywood. Hollywood fired her on September 25 for failing to return to work after exhausting her FMLA leave.
 

 Ms. Thomas also applied for and received short-term disability benefits under the American Fidelity policy, stating only, “My right hand has just been giving me problems.” She made no claim for workers’ compensation benefits at this time, and Hollywood paid none.
 

 Dr. Milstead performed surgery on her right hand on September 11, 2003. He felt it was reasonably successful, but her recovery was slow and incomplete, and her left hand also needed the operation.
 

 Ms. Thomas filed the instant disputed claim in November 2003, alleging an injury to her right wrist. She demanded weekly
 
 *720
 
 benefits, medical treatment, the choice of Dr. Milstead as her treating orthopedist, and penalties and attorney fees. Hollywood conceded that it had paid no benefits, as it had never heard that her injury was work-related. Initially, |sHollywood denied that it was in fact work-related, but rather an intentional, self-inflicted injury. The matter lay dormant for two years while Hollywood was in bankruptcy; in May 2007, it added a defense of fraud in that Ms. Thomas had told American Fidelity that the condition was
 
 not
 
 work-related.
 

 Meanwhile, Ms. Thomas moved to Arkansas and had the surgery on her left hand in September 2005, charging the procedure to Medicaid and again not telling her doctor that it was work-related. She testified that the operations helped, but she still had pain and could not grip things; for this reason, she could not work. She admitted, however, working part-time as a “lunch substitute” at a school in North Little Rock for the 2006-'07 school year, making about $70 a week, her only income since leaving Hollywood.
 

 At a deposition in May 2007, Dr. Mil-stead stated emphatically that Ms. Thomas’s CTS was work-related, resulting from repetitive work in the kitchen. He explained that the attending physician’s report which he signed stating the opposite, in April 2003, had actually been filled in by a nurse and was in error. He concluded that her work at Hollywood either caused or aggravated her CTS.
 

 Action of the WCJ
 

 One day before trial in September 2007, Hollywood filed a pretrial brief asserting that Ms. Thomas’s claim as to her left hand had prescribed because she never filed a disputed claim formally alleging this injury or amended her existing claim to incorporate it. Counsel argued the issue orally at the beginning of trial; the WCJ took it under advisement.
 

 |4Ms. Thomas testified as outlined above. She also introduced numerous medical records, including Dr. Milstead’s deposition. On direct examination, Dr. Milstead stated that in response to a letter in October 2004, he told claimant’s counsel that the condition was work-related.
 

 Hollywood called no live witnesses but introduced various medical and personnel records, together with the deposition of a Ms. Elledge, an adjuster for American Fidelity. She stated that the company never received any information from Ms. Thomas or from Dr. Milstead that the claimant’s condition was work-related; if it had, the company would not have paid the benefits. The WCJ took the case under advisement for nearly six months.
 

 The WCJ delivered oral reasons for judgment in April 2008. First, she ruled that Hollywood did not properly plead its exception of prescription as to the left wrist. She cited Hearing Officer Rule 5801, under which “written motions” are allowed in compensation proceedings; she also noted that Hollywood’s first pretrial statement listed “bilateral” CTS, showing that it had actual notice of the claim.
 

 The WCJ next found that Ms. Thomas’s CTS was work-related, based on Dr. Mil-stead’s expert opinion and the “opposite of the presumption” of La. R.S. 23:1031.1 D.
 
 [1]
 
 She awarded temporary total and supplemental earnings benefits through November 17, 2005. She also found that Ms.
 
 *721
 
 Thomas did not willfully injure herself and did not commit fraud.
 

 | BFinally, the WCJ found that Hollywood made no effort to verify or contradict it when Dr. Milstead “changed his mind.” It failed to get a second opinion and raised a defense of fraud belatedly. She therefore assessed four penalties of $2,000 each (for not instituting indemnity payments, for not providing the right wrist surgery, for not providing the left wrist surgery, and for not allowing Ms. Thomas’s choice of physician), an attorney fee of $15,000, and costs of $3,133.
 

 Hollywood has appealed, raising four assignments of error.
 

 Discussion: Defense of Fraud
 

 By its first assignment of error, Hollywood urges the WCJ erred in failing to find fraud under La. R.S. 23:1208. Hollywood argues that this statute has evolved to the point that
 
 any
 
 false statements or representations will result in forfeiture of benefits.
 
 Smith v. Riverwood Int’l,
 
 35, 727 (La.App. 2 Cir. 2/27/02), 810 So.2d 1175,
 
 writ denied,
 
 2002-0958 (La.5/31/02), 817 So.2d 101. Hollywood contends that Ms. Thomas repeatedly told healthcare providers and her private insurer, American Fidelity, that the condition was
 
 not
 
 work-related, and these falsehoods should subject her to forfeiture.
 

 Ms. Thomas concedes that she made numerous statements to healthcare professionals based on her best knowledge at the time; she simply did not know until October 2004 that her condition was work-related. She also asserts that Dr. Mil-stead’s office made an honest mistake when it stated in the April 2003 report that her condition was not work-related.
 

 | (¡Misrepresentation under the Workers’ Compensation Act is regulated by La. R.S. 23:1208 A:
 

 It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
 

 The penalty for a violation is the forfeiture of all benefits. La. R.S. 23:1208 E. The only requirements for a forfeiture of benefits under this statute are (1) a false statement or representation, (2) willfully made, and (3) made for the purpose of obtaining or defeating any benefit or payment.
 
 Resweber v. Haroil Const. Co.,
 
 94-2708 (La.9/5/95), 660 So.2d 7;
 
 Freeman v. Chase,
 
 42,716 (La.App. 2 Cir. 12/5/07), 974 So.2d 25. Forfeiture is a harsh remedy and must be strictly construed.
 
 Wise v. J.E. Merit Constructors Inc.,
 
 97-0684 (La.1/21/98), 707 So.2d 1214;
 
 Freeman v. Chase, supra.
 
 An inadvertent and inconsequential false statement will not result in forfeiture of benefits.
 
 Id.
 
 Section 1208 does not penalize
 
 any
 
 false statement, but only those willfully made for the purpose of obtaining benefits.
 
 Resweber v. Haroil Const. Co., supra.
 
 The WCJ’s finding or denial of forfeiture will not.be disturbed on appeal absent manifest error.
 
 Freeman v. Chase, supra.
 

 Ms. Thomas candidly admitted telling healthcare providers and her private insurer that her condition was not work-related. She maintained, however, that she simply did not know otherwise until many months later. The WCJ was in the superior position to assess her credibility and accepted her explanation as sincere. Arising from ignorance rather than design, Ms. Thomas’s statements to medical personnel do not satisfy the criteria of 17willfulness and purpose to obtain or defeat benefits under R.S. 23:1208 A. As in
 
 Freeman v. Chase, supra,
 
 the claimant’s erroneous statements do not warrant forfeiture of benefits.
 
 *722
 
 Moreover, there is no showing that her statements to American Fidelity had any bearing whatsoever on her potential comp claim. We perceive no manifest error, and this assignment lacks merit.
 

 Finding of Occupational Disease
 

 By its second assignment of error, Hollywood urges the WCJ erred in finding that Ms. Thomas met the burden of proving her alleged occupational disease, bilateral CTS. Under La. R.S. 23:1031.1 B, an occupational disease must be “due to. causes and conditions characteristic of and peculiar to the particular trade, occupation, process or employment.” Hollywood cites the restrictive reading of this statute in
 
 Fite v. Louisiana Title Co.,
 
 36,393 (La.App. 2 Cir. 10/24/03), 859 So.2d 259,
 
 writ denied,
 
 2003-3230 (La.2/20/04), 866 So.2d 829, in which this court held that bilateral CTS was not a characteristic of and peculiar to the job of a title abstractor. Hollywood argues that the record lacks hard evidence linking chefs to bilateral CTS, and lacks the required level of causation. It also contends that there could not be causation because Ms. Thomas told so many' people, for so many months, that it was
 
 not
 
 work-related.
 

 Ms. Thomas responds that Dr. Milstead stated eight times in deposition that her bilateral CTS was work-related, and said so in writing as early as October 28, 2004; and that Hollywood offered no contrary evidence. Further, CTS is expressly classified as an occupational disease in |sR.S. 23:1031.1 B and is compensable even if the claimant does not give a complete job description to her treating physician.
 
 Brown v. Guide Corp.,
 
 42,141 (La.App. 2 Cir. 5/9/07), 956 So.2d 808. She argues that
 
 Fite v. Louisiana Title
 
 is inapposite as in that case neither of the claimant’s two treating physicians testified. She concludes that the WCJ committed no manifest error.
 

 An occupational disease, for purposes of the Workers’ Compensation Act, is defined in La. R.S. 23:1031.1 B:
 

 An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related and perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section.
 

 The causal link between the claimant’s illness and the work-related duties must be established by a reasonable probability.
 
 Seal v. Gaylord Container Corp.,
 
 97-0688 (La.12/2/97), 704 So.2d 1161;
 
 Jackson v. Red River Parish School Bd.,
 
 42,080 (La.App. 2 Cir. 4/4/07), 954 So.2d 818, 219 Ed. L. Rep. 819. The statute explicitly includes CTS as an occupational disease.
 
 Kelly v. CNA Ins. Co.,
 
 98-0454 (La.3/12/99), 729 So.2d 1033. The activities of a chef may lead to CTS.
 
 Ball v. Wendy’s Int’l,
 
 36,923 (La.App. 2 Cir. 3/5/03), 839 So.2d 1208,
 
 writ denied,
 
 2003-0978 (La.5/30/03), 845 So.2d 1056.
 

 Dr. Milstead was unusually emphatic in his opinion that Ms. Thomas’s CTS resulted from the repetitive work of a chef in a buffet line. [ ¡/This distinguishes the case from
 
 Fite, supra,
 
 in which the claimant failed to offer convincing medical evidence of causation. Moreover, Hollywood offered absolutely no evidence to dispute Dr. Milstead’s opinion. Its technical contention that the claimant did not describe “causes and conditions characteristic of and peculiar to” her trade will not countervail the strong medical evidence.
 

 
 *723
 
 The WCJ committed no manifest error in finding an occupational disease arising from Ms. Thomas’s employment with Hollywood. This assignment of error lacks merit.
 

 Exception of Prescription
 

 By its third assignment of error, Hollywood urges the WCJ erred in failing to recognize the exception of prescription as to Ms. Thomas’s left hand. Hollywood shows that the Form 1008 listed injury to the right wrist only, and was never amended to add the left wrist; she first mentioned it in a pretrial statement in August 2007. Under R.S. 23:1031.1 E, the claimant must file “a claim as provided in this Chapter” within one year of the date the disease manifested itself, the date it disabled her, and the date she reasonably believed it was occupationally related. Hollywood submits that she missed the deadline, thus defeating the claim. It also shows that under La. C.C.P. art. 928 B, the peremptory exception of prescription can be raised at any time, and the WCJ should have heard it.
 

 Ms. Thomas responds that despite Art. 928 B, the WCJ was entitled to disregard the plea of prescription under Hearing Rule 5801. She also |inasserts that Hollywood waived the issue by failing to object to evidence of left-hand CTS at trial.
 

 The time limitations for filing occupational disease claims are contained in La. R.S. 23:1031.1 E:
 

 All claims for disability arising from an occupational disease are barred unless the employee files a claim as provided in this Chapter within one year of the date that:
 

 (1) The disease manifested itself.
 

 (2) The employee is disabled from working as a result of the disease.
 

 (3)The employee knows or has reasonable grounds to believe that the disease is occupationally related.
 

 The prescriptive periods under the Workers’ Compensation Act are liberally construed to maintain rather than bar a claimant’s action.
 
 Millican v. General Motors Corp.,
 
 34,207 (La.App. 2 Cir. 11/1/00), 771 So.2d 234, and citations therein.
 

 Hollywood’s position is technically correct. Ms. Thomas never filed “a claim as provided in this Chapter” or amended her existing claim and hence did not comply with R.S. 23:1031.1 E. The WCJ erred in relying on Hollywood’s actual notice of the left-hand claim, as shown by its first pretrial statement. A prior version of R.S. 23:1031.1 E required the employee to file a claim with her
 
 employer
 
 within six months of the applicable events; this was broadly construed to encompass any form of notice.
 
 LaCour v. Hilti Corp.,
 
 98-2691 (La.5/18/99), 733 So.2d 1193. Perhaps in response to
 
 LaCour,
 
 the legislature amended the statute in 2001, extending the filing period to one year but requiring the filing of “a claim as ^provided in this Chapter,” i.e., a Form 1008. 2001 La. Acts No. 1189, § 1;
 
 Lee v. Schumpert,
 
 36,733 (La.App. 2 Cir. 1/29/03), 836 So.2d 1214, fn. 2. Hollywood’s constructive notice, therefore, would seem to have no bearing on whether Ms. Thomas filed a timely claim.
 

 Likewise, Ms. Thomas is technically correct that Hollywood never formally filed an exception of prescription. The peremptory exception of prescription may be raised only by the urging party and it must be specially pleaded through a formal, written exception. La. C.C.P. art. 927 B. Arguing the issue either orally or in a memorandum to the court does not suffice.
 
 Mesh v. Christus St. Patrick Hosp.,
 
 2005-674 (La.App. 3 Cir. 12/30/05), 918 So.2d 559;
 
 Box v. City of Baton Rouge,
 
 
 *724
 
 2002-0198 (La.App. 1 Cir. 1/15/03), 846 So.2d 13, and citations therein. Hearing Officer Rule 5801 confirms that the pleadings allowed in workers’ compensation claims “shall be in writing and shall consist of,”
 
 inter alia,
 
 written motions.
 

 With the case in this procedural posture, we perceive no error in the WCJ’s decision to disregard the plea of prescription on grounds that Hollywood never filed a written exception to that effect. Although such an exception very well may have prevailed, we are guided by the liberal construction of prescriptive periods in the Workers’ Compensation Act,
 
 Millican v. General Motors Corp., supra,
 
 and the ideal of fair notice to the claimant and the court. This assignment lacks merit.
 

 Penalties and attorney fee
 

 By its fourth assignment of error, Hollywood urges the WCJ erred in assessing penalties 112and attorney fees. Under La. R.S. 23:1201 F, penalties and fees cannot be assessed if the employer “reasonably controverted” the claim. This penal provision is strictly construed.
 
 Trahan v. Coca Cola Bottling Co. United,
 
 2004-0100 (La.3/26/05), 894 So.2d 1096. Hollywood contends that Ms. Thomas went 1 ]é years telling doctors and insurance companies that her condition was
 
 not
 
 work-related, and the employer should not be penalized for taking her at her word.
 

 Ms. Thomas responds that the award was proper, as Hollywood knew as early as October 28, 2004, that Dr. Milstead now considered the condition to be work-related, but took no action (such as seeking a second medical opinion) until it filed a defense of fraud in May 2007, a mere four months before trial.
 

 Failure to provide payment of benefits will result in a penalty and attor-
 

 ney fee “unless the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.” La. R.S. 23:1201 F(2);
 
 McCarroll v. Airport Shuttle Inc.,
 
 2000-1123 (La.11/28/00), 773 So.2d 694. The phrase “reasonably controvert” means that the defendant must have “some valid reason or evidence on which to base his denial of benefits.”
 
 Brown v. Tex-LA Cartage Inc.,
 
 98-1063 (La.12/1/98), 721 So.2d 885;
 
 Williams v. Mark Johnson Plumbing,
 
 38,954 (La.App. 2 Cir. 9/22/04), 882 So.2d 1193. Awards of penalties and attorney fees in compensation cases are essentially penal, and are imposed to deter indifference and undesirable conduct by employers and their insurers toward injured workers.
 
 Trahan v. Coca Cola Bottling Co., supra; Langley v. Petro Star Corp. of La.,
 
 2001-0198 (La.6/29/01), 792 So.2d |13 721. Penalties should not be imposed in doubtful cases, where a bona fide dispute exists as to the claimant’s entitlement to benefits, and the mere fact that an employer loses a disputed claim is not determinative.
 
 J.E. Merit Constructors Inc. v. Hickman,
 
 2000-0943 (La.1/17/01), 776 So.2d 435;
 
 James v. Express Marketing Inc.,
 
 42,740 (La.App. 2 Cir. 12/5/07), 973 So.2d 125,
 
 writ denied,
 
 2008-0062 (La.3/7/08), 977 So.2d 910. However, the employer disputing causation must demonstrate that it made a reasonable effort to ascertain the cause of the claimant’s condition before it denies benefits.
 
 Smith v. Pilgrim’s Pride Corp.,
 
 44,-080 (La.App. 2 Cir. 2/25/09), 4 So.3d 983.
 

 Dr. Milstead’s office initially indicated that Ms. Thomas’s injury was not work-related, but he corrected this in his deposition in May 2007.
 
 [2]
 
 Until that point, Hollywood was justified in withholding benefits,
 
 *725
 
 given Ms. Thomas’s own equivocal statements to healthcare personnel and American Fidelity. However, Dr. Milstead was uncommonly emphatic in his view that her CTS arose from repetitive work in the kitchen, and that her employment either caused or aggravated the condition. The record does not show that Hollywood made any effort to adduce a valid reason or evidence to rebut his medical opinion. This is the type of “indifference and undesirable conduct” that the statute seeks to deter. Hollywood’s failure to present any evidence that would create a closely disputed factual issue warranted the imposition of the penalties and attorney fee. This assignment lacks merit.
 

 |
 
 uAnsiver to Appeal
 

 By answer to appeal, Ms. Thomas seeks additional attorney fees for the time spent in defending the appeal. Counsel asserts that he spent some 12 hours preparing the appellate brief, for which he requests an additional $2,500 fee.
 

 A workers’ compensation claimant is entitled to an increase in attorney fees to reflect additional time incurred in defending the employer’s unsuccessful appeal.
 
 Frith v. Riverwood Inc.,
 
 2004-1086 (La.1/19/05), 892 So.2d 7;
 
 Freeman v. Chase, supra.
 
 Bearing in mind the moderate complexity of this case, the length of the brief and the fact that the WCJ has already awarded counsel a high-end fee of $15,000, we find an additional attorney fee of $1,000 is warranted.
 

 Conclusion
 

 For the reasons expressed, the judgment of the WCJ is affirmed in its entirety. Judgment is further rendered in favor of Linda R. Thomas and against Hollywood Casino for an additional attorney fee of $1,000. Appellate costs are to be paid by the appellant.
 

 AFFIRMED; ADDITIONAL ATTORNEY FEE AWARDED.
 

 [1]
 

 . This statute creates a presumption that CTS is
 
 not
 
 work-related if the claimant has worked for the employer for less than 12 months.
 
 O’Regan
 
 v.
 
 Preferred Enter. Inc.,
 
 98-1602 (La.3/17/00), 758 So.2d 124. It does not, however, create a presumption of causation in favor of a claimant who, like Ms. Thomas, was employed for a year or more.
 

 [2]
 

 . He also stated it was work-related in a form response to claimant’s counsel in October 2004, but the record is not clear that this form was relayed to Hollywood's counsel.