LOLLEY, J.
b Greg Williams Logging, LLC, and its workers’ compensation insurer, Stonetrust Commercial Insurance Company (collectively referred to as “Stonetrust”), appeal the judgment of the Office of Workers’ Compensation (“OWC”), District 01 E, *10 State of Louisiana, dismissing their Motion for Summary Judgment and granting the Motion for Summary Judgment of Cornelious George. For the following reasons we amend the OWC’s judgment, and as amended, affirm.
Facts
From January 28, 2008, through February 7, 2009, George was employed as a log truck driver with Greg Williams Logging, LLC. On March 18, 2008, George was involved in a motor vehicle accident while driving a loaded log truck.[1] A vehicle failed to yield, pulled out in front of George, and caused the accident; George was not at fault. The two women in the other vehicle were killed, while George sustained only minor injuries. He received medical treatment and began working again in late May 2008. George maintains that after the accident he began having pain in his neck that radiated down his arms as well as numbness. He also claimed to have psychological effects such as flashbacks of the accident, inability to sleep, and anxiety. Because he assumed these problems would go away, George continued working. In December 2008, when George still had no relief from these symptoms, he saw Dr. James Finley, an orthopedic surgeon, who then referred him to Dr. Herbert Vandenberg, a psychiatrist, for his mental |2symptoms. George began seeing Dr. Vandenberg monthly to regulate medication for his psychological issues, as well as Andrea Williams, a counselor, with whom he met for weekly sessions. In February 2009, George was diagnosed with Post Traumatic Stress Disorder (“PTSD”) and was found to be unable to work. Stonetrust began paying George weekly workers’ compensation indemnity benefits for temporary total disability in the amount of $522.00 per week. Stonetrust also paid for his medical treatment. Around the time George was found to be unable to work, he received a fax indicating that on February 7, 2009, he had been fired from his job for insubordination to the owner of Greg Williams Logging, LLC. George continued to be unable to work and received indemnity payments from Stone-trust, as well as payment for his medical treatment.
In Juné 2009, George was arrested and charged with possession of marijuana with intent to distribute, possession of a Schedule IV drug, possession of drug paraphernalia, resisting arrest, and battery of a police officer. The local newspaper ran a story about the events surrounding his arrest. It stated that the Lincoln Parish SWAT team entered George’s home to execute a search warrant, because he was suspected of dealing drugs. It also stated that George “would not go down without a fight” and that he “charged the team and began hitting one of the members[.]” George later pled guilty to simple possession of marijuana and all the other charges were dropped. He was sentenced to one year of probation for this conviction.
On June 24, 2009, Stonetrust filed a claim seeking approval to terminate benefits, stating as its reason, “Employer seeks termination of|3benefits because claimant’s physical capability is equal to pre-injury status. See attached newspaper article.” Before receiving the approval it sought from OWC to terminate the benefits, however, Stonetrust unilaterally terminated George’s indemnity benefits on September 9, 2009. It reasoned that if George was able to assault a police officer and deal drugs, he was physically and mentally ca *11 pable of driving a log truck. Stonetrust’s claim to terminate the benefits proceeded on, nonetheless, and a trial date was set before the OWC. George filed a reconven-tional demand seeking the resumption of payment of indemnity benefits along with penalties and attorney fees for the wrongful discontinuance of benefits and the refusal of Stonetrust to provide medical treatment. George also filed a Motion for Summary Judgment. Stonetrust amended its claim to add the defense of fraud pursuant to La. R.S. 23:1208 based on allegedly false statements George made to his doctors in the interest of receiving workers’ compensation benefits. Stonetrust also filed a cross motion for summary judgment.
After a hearing on the matter, the OWC denied Stonetrust’s motion for summary judgment and granted George’s motion for summary judgment seeking the resumption of the payment of his indemnity benefits and medical treatment. Additionally, George was awarded $8,000.00 in penalties and $8,000.00 in attorney fees. Stonetrust now asserts the instant appeal.
14Law and Discussion
In its assignments of error Stonetrust claims the trial court erred in both granting George’s Motion for Summary Judgment, as well as denying Stonetrust’s Motion for Summary Judgment. Specifically, Stonetrust claims the trial court erred when it found that George did not make false statements to his treating physician in order to obtain workers’ compensation benefits, constituting fraud and thereby precluding him from receiving benefits. George claims Stonetrust discontinued the payment of benefits without any medical support. He also denies making any false statements for the purpose of obtaining workers’ compensation benefits. On appeal, George also requests an additional $4,000.00 in attorney fees.
The purpose of the Louisiana Workers’ Compensation Act is to create a compromise in which both employees and employers surrender certain advantages in exchange for others which are more valuable to both parties and society. Deshotel v. Guichard Operating Co., Inc., 2003-3511 (La.12/17/04), 916 So.2d 72. To encourage employers to make voluntary workers’ compensation payments to legitimately injured employees, the legislature has enacted specific provisions. Snelling Personnel Services v. Duhon, 2000-661 (La.App.3d Cir.11/02/00), 772 So.2d 350. When an employee has no judgment declaring his entitlement to benefits, but, rather, the employer has been paying these benefits voluntarily, those payments are not admissions of liability. Id. Workers’ compensation law allows an employer or employee to file a claim with the OWC to resolve a dispute between the employer and the claimant. La. R.S. 23:1310(A). It is not | ¿legally necessary that an employer file a 1008 form with the OWC requesting permission to terminate benefits that are being paid voluntarily; the employer may terminate voluntary payments at will and with impunity, provided the termination is not arbitrary and capricious. Snelling Personnel Services v. Duhon, supra. However, if the employer does not seek permission to terminate benefits through the filing of a 1008 form in advance of actually terminating those benefits, it puts itself at risk of having to pay penalties and attorney fees if the OWC finds the unilateral termination of benefits was arbitrary and capricious. Id.
To enforce the payment of workers’ compensation benefits, several statutes provide for the imposition of penalties and attorney fees for delinquent payment or for nonpayment of benefits. Any employer or insurer who at any time discontinues payment of compensation claims due, when *12 such discontinuance is found to be “arbitrary, capricious, or without probable cause,” is subject to a penalty not to exceed $8,000.00 and reasonable attorney fees. La. R.S. 28:1201(1); Brien v. Leon Angel Constructors, Inc., 42,904 (La.App.2d Cir.03/12/08), 978 So.2d 576, writ denied, 2008-0802 (La.06/06/08), 983 So.2d 919. Arbitrary and capricious conduct is willful and unreasonable action, without consideration and regard for the facts and circumstances presented. J.E. Merit Constructors, Inc. v. Hickman, 2000-0943, (La.01/17/01), 776 So.2d 435; Brien v. Leon Angel, supra. Awards of penalties and attorney fees in workers’ compensation cases are essentially penal in nature, and are imposed to deter indifference and undesirable conduct by employers and their insurers toward injured workers. Trahan v. Coca Cola Bottling Co. United, Inc., 2004-0100 (La.03/02/05), 894 So.2d 1096.
A workers’ compensation claimant is generally entitled to an additional attorney fee to reflect additional time incurred in defending the employer’s unsuccessful appeal. Frith v. Riverwood, Inc., 2004-1086 (La.01/19/05), 892 So.2d 7; Thomas v. Hollywood Casino, 44,271 (La.App.2d Cir.05/13/09), 13 So.3d 717. Any award of an attorney fee is subject to review under the court’s inherent power to regulate the practice of law. State, Dept. Of Transp. and Development v. Williamson, 597 So.2d 439 (La.1992); Reed v. St. Francis Medical Center, 44,211 (La.App.2d Cir.04/08/09), 8 So.3d 824.
An employer has a continuing duty to fully investigate an employee’s medical status before terminating benefits. Wilson v. St. Mary Community Action, 2000-2106, (La.App.1st Cir.12/28/01), 803 So.2d 1106. Compensation benefits may not be terminated based on inconclusive medical reports. An employer or insurer must make reasonable efforts to ascertain the employee’s exact medical condition before terminating benefits. Id. Termination of benefits may be considered arbitrary when it appears further medical information was required to make an exact determination of the employee’s condition. This obligation is continuing in nature. Id.
Misrepresentation and forfeiture under the Workers’ Compensation Act are regulated by La. R.S. 23:1208 which states, in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the 17provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
[[Image here]]
E. Any employee violating this Section shall, upon determination by workers’ compensation judge, forfeit any right to compensation benefits under this Chapter.
The only requirements for a forfeiture of benefits under this statute are: (1) a false statement or representation; (2) willfully made; and (3) made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Const. Co., 94-2708 (La.09/05/95), 660 So.2d 7; Thomas v. Hollywood Casino, supra. All three requirements must be present before a penalty will be imposed. Gilcrease v. Wal-Mart Stores, Inc., 36,523 (La.App.2d Cir.12/11/02), 843 So.2d 415. There is no requirement of prejudice to the employer; when the statute is satisfied, benefits will be forfeited for the sole reason that the claimant has willfully and deliberately attempted to defraud the workers’ compensation system, and no further requirements are to be imposed. Freeman v. Chase, 42,716 (La.App.2d Cir.12/05/07), 974 So.2d 25.
*13 Forfeiture is a harsh remedy and must be strictly construed. An inadvertent and inconsequential false statement -will not result in forfeiture of benefits. Louisiana R.S. 23:1208 does not penalize any false statement, but only those willfully made for the purpose of obtaining benefits. The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. Slater v. Mid-South Extrusion, 43,343 (La.App.2d Cir.08/13/08), 989 So.2d 252.
| ^Another way an employee may forfeit his right to receive benefits is by becoming incarcerated. Louisiana R.S. 23:1201.4 governs this type of forfeiture. It states:
The employee’s right to compensation benefits, including medical expenses, is forfeited during any period of incarceration, unless a workers’ compensation judge finds that an employee has dependents who rely on a compensation award for their support, in which case said compensation shall be made payable and transmitted to the legal guardian of the minor dependent or other person designated by the workers’ compensation judge and such payments shall be considered as having been made to the employee. After release from incarceration, the employee’s right to claim compensation benefits shall resume. An employee who is incarcerated but is later found to be not guilty of felony criminal charges or against whom all felony charges have been dismissed by the prosecutor shall have the prescriptive period for filing a claim for benefits under this Chapter extended by the number of days he was incarcerated.
The OWC’s finding or denial of forfeiture will not be disturbed on appeal absent manifest error. Thomas v. Hollywood Casino, supra; Slater v. Mid-South Extrusion, supra. When there are two permissible views of the evidence, a factfinder’s choice between them can never be manifestly erroneous or clearly wrong. Moore v. Transmissions, Inc., 41,472 (La.App.2d Cir.09/27/06), 940 So.2d 694. Under this standard, if the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Baker v. Stanley Evans Logging, 42,156 (La.App.2d Cir.06/20/07), 960 So.2d 351, writ denied, 2007-1817 (La.12/14/07), 970 So.2d 533.
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact. In re Clement, 45,454 (La.App.2d Cir.08/11/10), 46 So.3d 804. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action allowed by law. La. C.C.P. art. 966(A)(2). A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Palmer v. Martinez, 45,318 (La.App.2d Cir.07/21/10), 42 So.3d 1147, writs denied, 2010-1952, 2010-1953, 2010-1955 (La.11/05/10), 50 So.3d 804, 805. Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Palmer v. Martinez, supra. Summary judgment is seldom appropriate for determinations based on subjective facts of motive, intent, good faith, knowledge or malice, yet it may be granted on a subjective issue when no issue of material fact exists concerning that issue. Smith v. Our Lady of *14 the Lake Hosp., Inc., 93-2512 (La.07/05/94), 639 So.2d 730; Brown v. International Paper Co., 38,892 (La.App.2d Cir.09/22/04), 882 So.2d 1228.
The questions presented here are twofold: (1) whether the summary judgment evidence presented is sufficient to find that George is entitled to judgment as a matter of law ordering payment of benefits, medical treatment, penalties, and attorney fees, and (2) whether the OWC erred in finding that George had not committed fraud.
|TnIt is clear here that George was injured in a work-related accident. Neither party disputes that fact. It is also clear that Stonetrust voluntarily began paying George indemnity benefits and then unilaterally discontinued those payments based on a newspaper article. Prior to the termination of payments George was receiving benefits for temporary total disability. Louisiana R.S. 23:1221(l)(d) defines when these benefits can be terminated. It states:
An award of benefits based on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made and the employee’s physical condition has improved to the point that continued, regular treatment by a physician is not required. (Emphasis added.)
A “reasonably reliable determination” that George was no longer entitled to benefits can certainly not be made solely from a newspaper article. This determination especially cannot be made when that newspaper article reported facts contrary to the arresting officer’s testimony in deposition. Officer Kenneth Sasser of the Lincoln Parish Sheriffs Department SWAT team was the officer who came into physical contact with George the night of his arrest. Upon entering George’s home, without warning, in the early hours of the morning, when it was still dark outside, Off. Sasser testified that George ran at him as he entered. Officer Sasser testified that he did not give George the opportunity to strike him because he immediately locked his arms down. George testified similarly. He explained that when he heard something at his door he thought someone was breaking into his home, so he ran out the door and ran over the first thing that was in front of him, namely, Off. Sasser. The OWC also noted Inthe distinctions between the newspaper article and the testimony, and in its reasons for judgment stated:
So the picture that had been painted by defendants in this case became a different view after actually looking at the deposition testimony. Initially the picture had been painted that Mr. George was actually fighting and swinging and actually getting the best of the officers. Well, after reviewing the documents and seeing how Mr. George was hit in the head with a helmet and how his arms were pinned underneath the armpits of the officer, I don’t see how Mr. George was able to do a lot of swinging.
Thus, it is clear that by relying solely on a factually unreliable newspaper article as the basis for the termination of benefits, Stonetrust did not make a “reasonably reliable determination.”
Additionally, George was still being treated regularly for his PTSD at the time the payments were terminated; Dr. Van-denberg had not released him to return to work. Termination of benefits may be considered arbitrary when it appears further medical information was required to make an exact determination of the employee’s condition. Here, there was no medical basis for terminating benefits. Stonetrust argues that if George could deal drugs and attack a police officer, he *15 could drive a log truck. However, we fail to see this correlation. George was diagnosed with PTSD and received benefits because of this diagnosis. The incidents of the night of his arrest, as published in the newspaper article, are not credible, nor do they make any sort of medical conclusions about George’s mental health or his ability to drive a log truck. There is nothing to. support the conclusion that George’s health had changed whatsoever from the time he was taken off work. | ^Therefore, we find that Stonetrust terminated George’s benefits arbitrarily and capriciously, with no medical basis.
It is also important to note that George did not forfeit his right to benefits because of his arrest. While La. R.S. 23:1201.4 provides that an employee forfeits his right to receive benefits while incarcerated; it does not state that this forfeiture applies upon arrest. Additionally, the statute provides if an employee is incarcerated and later found to be not guilty, he is entitled to make a claim for the extension of his benefits for the number of days he was incarcerated. Therefore, George did not forfeit his right to benefits when he was arrested and was only sentenced to probation, not incarceration.
We have found that George was entitled to receive benefits and that Stonetrust wrongfully discontinued them; therefore, George is entitled to the resumption of those benefits unless we find that he violated La. R.S. 23:1208, the statute governing the forfeiture of benefits for fraud. The requirements for a forfeiture of benefits are: (1) a false statement or representation; (2) willfully made; and (3) made for the purpose of obtaining or defeating any benefit or payment. While we do not condone untruthfulness, it is important to remember that forfeiture is a harsh remedy and must be strictly construed; an inadvertent and inconsequential false statement will not result in forfeiture of benefits.
Stonetrust highlights five statements it claims were falsely made by George and warrant a forfeiture of his benefits. The first statement was made when George told Dr. Vandenberg that he had stopped working |1Rdue to wrist pain. Stonetrust asserts this was false because George had actually stopped working because he had been fired. The second statement was made when George told Dr. Vandenberg he had no history of legal problems. Sto-netrust points out that George actually had several convictions in his past. The third and fourth statements were also made to Dr. Vandenberg. George stated he was not using illegal drugs and also described the details of his arrest. Stonetrust argues that George’s subsequent conviction for possession of marijuana proves that the first statement was fraudulently made. Stonetrust also argues that because George did not accurately convey the details of his arrest this also constitutes fraud. Last, Stonetrust asserts George made several false statements to Dr. David Williams who was examining him, not for the purposes of workers’ compensation, but in connection with a Social Security claim. Because George requested that Dr. Williams’ report depicting the answers to his questions be sent to Dr. Vandenberg, Stonetrust asserts any false statements made to Dr. Williams would have been for the purpose of obtaining workers’ compensation benefits and would warrant a forfeiture.
We find no statements made that constitute fraud as described in La. R.S. 23:1208 for several reasons. First, some of these statements cannot be said to be truly false as they are open to different interpretations. For example, when George stopped working there were several factors at play: his wrist pain, his PTSD, and his being *16 fired. Therefore, while maybe not technically correct, it was not a blatant lie when George stated his wrist pain | [4was a reason for stopping working. Second, George may have inadvertently made falsities in his statements. In describing his arrest, he mentioned having been caught with Xa-nax, yet failed to mention the other drugs involved. Those details may have been left out inadvertently. Third and most importantly, none of the statements appear to have been made for the purpose of obtaining benefits. George’s illegal drugs, the technical reason for his stopping working, and the details of his arrest would not have precluded him from receiving benefits; therefore, these statements do not constitute fraud warranting a forfeiture of his benefits. Additionally, we do not find that the statements George made to Dr. Williams were made with the intent to eventually get to Dr. Vandenberg and help him obtain workers’ compensation benefits, especially since Dr. Vandenberg had asked George many of the same questions himself.
The statements made by George are not the type of statements that typically warrant a forfeiture of benefits. For example, in Johnson v. Pinnergy, Ltd. 46,188 (La.App.2d Cir.04/13/11), 63 So.3d 302, the claimant lied under oath stating he had never seen a doctor for the work-related injury for which he was being compensated, when he in fact had. He also lied under oath stating he had never received medical treatment for a medical issue similar to his current issue prior to the work-related injury. This court found that the employee had forfeited his right to benefits because he had made false statements for the purpose of obtaining workers’ compensation benefits. Here, the false statements Stonetrust points out did not directly relate to George’s work-related injury or treatment. While |1sGeorge may not have always been an accurate historian, the inconsistencies in his statements do not rise to the level of fraud warranting forfeiture of his right to receive benefits.
Thus, we find the OWC did not err when it granted George’s Motion for Summary Judgment, ordering Stonetrust to pay George $522.00 per week in benefits from September 9, 2009 to the present and continuing in accordance with the law, all reasonable and necessary medical treatment for his work-related injuries, $8,000.00 in penalties, and $8,000.00 in attorney fees. We also amend the judgment to include payment of an additional $4,000.00 in attorney fees for the work George’s attorney performed on this appeal.
Conclusion
Considering the foregoing, we amend the judgment of the OWC in favor of Cornelious George and, and as amended, we affirm. All costs of this appeal are assessed to the appellants, Greg Williams Logging, LLC, and Stonetrust Commercial Insurance Company.
AMENDED, AND AS AMENDED, AFFIRMED.
CARAWAY, J., dissents with written reasons.

. Although throughout the record the dates of March 18, 2008, and May 18, 2008, were used interchangeably as the date of the accident, we will use the date of March 18, 2008, as it is the date used on the 1008 claim form.