# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #027

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **26th day of June, 2019**, are as follows:

**PER CURIAM**:

2019-C-0040      ELIZABETH SOILEAU v. WAL-MART STORES, INC.

In this workers' compensation matter, we are presented with the question of whether an employee's motion to compel her employer to choose a pharmacy other than the pharmacy at its retail stores to fill her prescriptions is premature in the absence of any claim that she has not been furnished proper medical attention or that there have been delays or deficiencies in filling prescriptions. For the reasons that follow, we find the matter is premature and does not present a justiciable controversy. We therefore vacate the judgment of the court of appeal.

VACATED.

JOHNSON, C.J., dissents and assigns reasons.
HUGHES, J., dissents with reasons.
GENOVESE, J., dissents and assigns reasons.

06/26/19

SUPREME COURT OF LOUISIANA

No. 2019-C-0040

ELIZABETH SOILEAU

VERSUS

WAL-MART STORES, INC.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, OFFICE OF WORKERS' COMPENSATION,
DISTRICT 4

## PER CURIAM

In this workers' compensation matter, we are presented with the question of whether an employee's motion to compel her employer to choose a pharmacy other than the pharmacy at its retail stores to fill her prescriptions is premature in the absence of any claim that she has not been furnished proper medical attention or that there have been  delays or deficiencies in filling prescriptions.  For the reasons that follow, we find the matter is premature and does not present a justiciable controversy. We therefore vacate the judgment of the court of appeal.

## FACTS AND PROCEDURAL HISTORY

Elizabeth Soileau filed a disputed claim for workers' compensation benefits alleging she injured her right arm and hand in the course and scope of her employment with Wal-Mart Stores, Inc. ("Wal-Mart").  Pursuant to a 2012 consent judgment, Ms. Soileau received medical treatment, including prescriptions, some of which she filled at a Wal-Mart pharmacy.

In 2016, Ms. Soileau obtained a judgment against Wal-Mart ordering that she was entitled to receive certain prescriptions, as prescribed by her physician.  Ms.

Soileau began filling her prescriptions at Falcon Pharmacy.

Following this court's opinion in *Burgess v. Sewerage & Water Board of New Orleans*, 16-2267 (La. 6/29/17), 225 So.3d 1020, which held the choice of pharmacy belongs to the employer, Wal-Mart notified Ms. Soileau in writing that she could only use "a Wal-Mart or Sam's Club Pharmacy" for her future prescriptions needs. Wal-Mart further advised Ms. Soileau it would not issue reimbursement for medications dispensed to Wal-Mart workers' compensation patients from any pharmacy other than a Wal-Mart or Sam's Club Pharmacy.

On August 18, 2017, Ms. Soileau filed a "Motion to Compel." In the motion, she alleged "Wal-Mart is refusing to approve or authorize medications anywhere other than Wal-Mart" and she "should not be forced to obtain medications from her employer directly and cannot go without her medication."

The motion proceeded to a hearing before the Office of Workers' Compensation ("OWC"). At the hearing, Ms. Soileau testified that in September 2017 (after she filed her motion), Wal-Mart's pharmacy denied two of her workers' compensation prescriptions, but admitted she had no written documentation of the denial.

At the conclusion of the hearing, the workers' compensation judge denied Ms. Soileau's motion to compel, finding that Wal-Mart had the right to choose the pharmacy at its retail stores to fill Ms. Soileau's prescriptions. However, the workers' compensation judge explained that in the event Ms. Soileau experienced any delays or deficiencies in the filling of her prescriptions, she "has a remedy under Louisiana Revised Statute 23:1201E."

Ms. Soileau appealed. A divided panel of the court of appeal reversed, finding that a conflict of interest would be created if Wal-Mart were permitted to designate

its own pharmacy as the only pharmacy Ms. Soileau could use for her workers' compensation prescriptions. Two judges dissented, one of whom found the matter was premature. *Soileau v. Wal-Mart Stores, Inc.*, 2018-284 (La. App. 3 Cir. 12/6/18), 260 So.3d 688.

Upon Wal-Mart's application, we granted certiorari to consider the correctness of this decision. *Soileau v. Wal-Mart Stores, Inc.*, 2019-0040 (La. 3/6/19), 266 So. 3d 904.

## DISCUSSION

Louisiana Revised Statute 23:1314 provides, in pertinent part:

> A. The presentation and filing of the petition under R.S. 23:1310.3 **shall be premature** unless it is alleged in the petition that:
>
> * * *
>
> (2) The employee **has not been furnished the proper medical attention**, or the employer or insurer has not paid for medical attention furnished. . . . [emphasis added].

The purpose of this provision is to provide for dismissal of a claim as premature based on the failure to make allegations which are essential under the statute. *Romero v. State Farm Fire & Cas. Co.*, 452 So. 2d 382, 384 (La. App. 3rd Cir. 1984). *See also Jim Walter Homes v. Long*, 2002-0950 (La. App. 4 Cir. 12/18/02), 835 So.2d 877, 879 (explaining that in the absence of compliance with the requirements of La. R.S. 23:1314, the claim was premature).

In the instant case, Ms. Soileau's August 18, 2017 "Motion to Compel" states, in pertinent part:

> When Ms. Soileau attempted to refill her prescriptions for her work injury at Falcon Pharmacy, Wal-Mart rejected her medications, indicating that Mr. [sic] Soileau would have to refill her medications at her employer's place of business.

* * *

> Wal-Mart is refusing to approve or authorize medications anywhere other than Wal-Mart and Ms. Soileau requests an expedited hearing concerning this issue as Ms. Soileau should not be forced to obtain medications from her employer directly and cannot go without her medication.

Nothing in this motion alleges that Wal-Mart refused to furnish Ms. Soileau with the proper medical attention, as required by La. R.S. 23:1314. Rather, the motion simply alleges Wal-Mart was "refusing to approve or authorize medications **anywhere other than Wal-Mart**. . . ." [emphasis added]. The obvious implication of this language is that Wal-Mart would approve medication through its own pharmacy.

In brief to this court, Ms. Soileau asserts La. R.S. 23:1314 is inapplicable because it is limited to the initiation of a claim. Ms. Soileau contends her current motion to compel was simply a continuation of her original claim filed in 2012.

We see no merit to this argument. The language of La. R.S. 23:1314 makes reference to La. R.S. 23:1310.3, which provides:

> A. A claim for benefits, the controversion of entitlement to benefits, or other relief under the Workers' Compensation Act shall be initiated by the filing of the appropriate form with the office of workers' compensation administration. Mailing, facsimile transmission, or electronic transmission of the form and payment of the filing fee within five days of any such mailing or transmission constitutes the initiation of a claim under R.S. 23:1209.

The term "claim" is nowhere defined in the Workers' Compensation Act. *Ross v. Highlands Ins. Co.*, 590 So.2d 1177, 1181 (La. 1991). However, we have determined it is clear from the context of provisions that the term refers to a claim for relief, not the enforcement of a judgment. *Id.* A claim is initiated by the filing of a petition with the OWC once an issue surfaces which the parties cannot themselves resolve. *Id.*

4

In the case at bar, Ms. Soileau is not seeking to enforce a judgment stemming from her earlier claim, but is instead seeking new relief in the form of an order requiring Wal-Mart to permit her to use a pharmacy other than its own. Because the parties are unable to resolve this issue on their own, Ms. Soileau is required to file a new claim to seek such relief.

Alternatively, Ms. Soileau submits Wal-Mart waived its right to assert prematurity by failing to file a dilatory exception of prematurity as required by La. Code Civ. P. art. 928. Ms. Soileau's argument finds some support in *Wilson v. St. Mary Community Action*, 2000-2106 (La. App. 1 Cir. 12/28/01), 803 So.2d 1106, 1111–12, in which the court of appeal held that the defendants waived their right to assert prematurity under La. R. S 23:1314 because they failed to file a timely dilatory exception raising the objection of prematurity.

However, the court in *Dow v. Chalmette Restaurant, Ltd.*, 2015-0336 (La. App. 4 Cir. 5/18/16), 193 So.3d 1222, 1230–31, rejected this reasoning, explaining:

> The workers' compensation statute expressly provides that a workers' compensation judge "is not bound by the technical rules of evidence or procedure other than as herein provided." La. R.S. 23:1317(A). See also *Mitchell v. Accent Constr. Co.*, 00–0996, p. 2 (La.App. 4 Cir. 3/14/01); 785 So.2d 864, 866 ("the technical rules of the Code of Civil Procedure do not apply to workers' compensation cases").
>
> * * *
>
> Thus, in determining the issue of prematurity under La. R.S. 23:1314, workers' compensation judges are not bound by the articles in the Louisiana Code of Civil Procedure requiring the filing of an exception of prematurity prior to or with the filing of the Answer.

We find *Dow* is correctly reasoned. Nothing in La. R.S. 23:1314 requires the issue of prematurity to be raised in any specific way. Accordingly, we hold the general provisions of the Code of Civil Procedure in inapplicable in this context. Any

5

jurisprudence to the contrary is hereby overruled.

For the same reasons, we reject Ms. Soileau's argument that she expanded her pleadings by testifying at the hearing on the motion that Wal-Mart's pharmacy failed to fill two of her workers' compensation prescriptions. While there is general codal authority in La. Code Civ. P. art. 1154 for expansion of pleadings through introduction of evidence, La. R.S. 23:1314 uses very specific language, stating that the filing of the petition shall be premature unless certain allegations are made "in the petition." This clear language excludes any tacit or implied expansion of the allegations outside of the petition itself.

In addition to being premature from a procedural standpoint, we further find this case does not present a justiciable controversy for our review. We have defined a justiciable controversy as "an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relations of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of conclusive character." *Abbott v. Parker*, 259 La. 279, 249 So.2d 908, 918-19 (1971). A justiciable controversy must "be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *St. Charles Parish School Board. v. GAF Corp.*, 512 So.2d 1165, 1171 (La. 1987) (on rehearing). In order to avoid deciding abstract, hypothetical or moot questions, courts require that cases submitted for adjudication be justiciable, ripe for decision, and not brought prematurely. *Id*.

The arguments presented by Ms. Soileau demonstrate convincingly that no real and actual dispute has been presented in this matter. Rather, her arguments focus on

6

abstract harm she might suffer in the future if Wal-Mart is permitted to restrict her to its own pharmacy. The injury resulting from this purported conflict of interest is not based on any actual facts or occurrences; rather, she asks the court to assume that she will suffer harm if certain hypothetical facts occur. We decline to render an advisory opinion based on facts which may or may not occur at some unspecified time in the future.

In reaching this result, we do not mean to imply Ms. Soileau is without any remedy. As we have explained, "[i]f an injured employee experiences any delays or other discernable deficiencies in filling his prescriptions through the employer-chosen pharmacy, constituting a violation of the employer's duty under La. R.S. 23:1203(A), the employee has a remedy for penalties pursuant to La. R.S. 23:1201(E)." *Burgess*, 225 So.3d at 1028. In such a case, the matter can be resolved in the context of an actual dispute.

In summary, we find the OWC reached the correct result in denying Ms. Soileau's motion to compel. Because the motion to compel was premature and does not present a justiciable controversy, the court of appeal erred in expressing any opinion on the merits of the motion. Accordingly, we will vacate the judgment of the court of appeal and reinstate the judgment of the OWC dismissing the motion to compel.

## DECREE

For the reasons assigned, the judgment of the court of appeal is vacated and set aside. The judgment of the Office of Workers' Compensation dismissing the Motion to Compel filed by Elizabeth Soileau is hereby reinstated.

7

**SUPREME COURT OF LOUISIANA**

**No. 2019-C-0040**

**ELIZABETH SOILEAU**

**VERSUS**

**WAL-MART STORES, INC.**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, THIRD CIRCUIT, OFFICE OF WORKERS' COMPENSATION, DISTRICT 4**

**JOHNSON, Chief Justice, dissents and assigns reasons.**

I disagree with the majority, which finds plaintiff's claim is premature and does not present a justiciable controversy. Thus, I must respectfully dissent.

In *Burgess v. Sewerage & Water Bd. of New Orleans*, 16-2267 (La. 6/29/17), 225 So. 3d 1020, this court held that a worker's compensation claimant does not have a right to choose a specific pharmaceutical provider under the LWCA. However, this court also made clear that the claimant has protections under the law to ensure that the employer satisfies its obligations under La. R.S. 23:1023, which includes the obligation to furnish necessary drug treatment. *Id.* at 1028. Specifically, this court held that "if an injured employee experiences any delays or other discernable deficiencies in filling his prescriptions through the employer-chosen pharmacy, constituting a violation of the employer's duty under La. R.S. 23:1203(A), the employee has a remedy for penalties pursuant to La. R.S. 23:1201(E)." *Id*.

In this case, it is undisputed, and the record reflects, that Ms. Soileau obtained a judgment against Wal-Mart on September 13, 2016, entitling her "to prescriptions of Hydrocodone, Lyrica, Celebrex, and Voltaren gel prescribed by Dr. Blanda…." On August 10, 2017, following this court's decision in *Burgess*, Wal-Mart's workers' compensation administrator advised Ms. Soileau that all prescriptions for

Wal-Mart workers' compensation patients must be filled at a Wal-mart or Sam's Club pharmacy. During the hearing on her motion to compel on October 27, 2017, Ms. Soileau testified regarding problems she was experiencing with the Wal-Mart pharmacy. Specifically, Ms. Soileau testified that her physician faxed four prescriptions to the Wal-Mart pharmacy on September 12, 2017. On September 20, 2017, two of the prescriptions (Lortab/hydrocodone and generic Voltaren) were filled. She testified that the other two prescriptions to which she was entitled were not approved by Wal-Mart.

The majority of this court finds Ms. Soileau's case premature, reasoning that she was not seeking to enforce a judgment stemming from her earlier claim, but rather she was seeking new relief requiring Wal-Mart to choose another pharmacy other than its own. The majority acknowledges Ms. Soileau does have an available remedy in the form of penalties, but essentially finds Ms. Soileau is required to file a new claim to seek such relief.

In my view, the majority opinion creates an unreasonable burden for a claimant such as Ms. Soileau. Ms. Soileau has already obtained a judgment providing that she is entitled to certain prescription medications. Ms. Soileau testified during the hearing regarding problems she has experienced getting these prescription medications approved and filled by Wal-Mart's choice of pharmacy. To require Ms. Soileau to initiate another claim under these circumstances is onerous, needless, and runs afoul of principles of judicial economy. For these reasons, I respectfully dissent.

2

SUPREME COURT OF LOUISIANA

No. 2019-C-0040

ELIZABETH SOILEAU

VERSUS

WAL-MART STORES, INC.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, OFFICE OF WORKERS' COMPENSATION,
DISTRICT 4

**HUGHES, J., dissenting.**

I respectfully dissent from the per curiam in this case ruling that the injured employee/plaintiff's claim is premature since she failed to allege that she had "not been furnished proper medical attention" or that there had been "delays or deficiencies in filling prescriptions," and further holding that no justiciable controversy has been presented. The per curiam concludes that the appellate court erred in reversing the denial by the Office of Workers' Compensation Administration ("OWC") of the plaintiff's motion to compel Wal-Mart to designate a pharmacy other than Wal-Mart or Sam's Club for her prescriptions.

The per curiam relies on Paragraph (A) of La. R.S. 23:1314, entitled "Necessary allegations; dismissal of premature petition; dispute of benefits," which provides:

> The presentation and *filing of the petition under R.S. 23:1310.3* shall be premature unless it is alleged in the petition that:
> (1) The employee or dependent is not being or has not been paid, and the employer has refused to pay, the maximum percentage of wages to which the petitioner is entitled under this Chapter; or
> (2) The employee *has not been furnished the proper medical attention*, or the employer or insurer has not paid for medical attention furnished; or
> (3) The employee has not been furnished copies of the reports of examination made by the employer's medical practitioners after written request therefor has been made under this Chapter; or
> (4) The employer or insurer has not paid penalties or attorney's

fees to which the employee or his dependent is entitled.

(Emphasis added.)

A reading of the entirety of Paragraph (A), along with the statutory provision cited therein, La. R.S. R.S. 23:1310.3, entitled "*Initiation* of claims; voluntary mediation; procedure," which states in pertinent part:  "A claim for benefits, the controversion of entitlement to benefits, or other relief under the Workers' Compensation Act shall be *initiated* by the filing of the appropriate form with the office of workers' compensation administration . . . ," leads to the conclusion that both La. R.S. 23:1314 and La. R.S. 23:1310.3 address the "initiation" of an action before the OWC by "filing of the petition."  (Emphasis added.)

In this case, when the injured employee/plaintiff filed a motion to compel with the OWC, she filed this pleading into an existing OWC proceeding; therefore, La. R.S. 23:1314 and La. R.S. 23:1310.3 would not be applicable.  An ongoing OWC proceeding is governed by La. R.S. 23:1310.8, entitled "Jurisdiction continuing; determining as to final settlement," which provides:  "The power and jurisdiction of the workers' compensation judge over each case shall be continuing and he may, upon application by a party and after a contradictory hearing, make such modifications or changes with respect to former findings or orders relating thereto if, in his opinion, it may be justified . . . ."

The existing proceeding, into which the plaintiff filed her August 18, 2017 motion to compel "Wal-Mart to select and approve her work related medications at a pharmacy other than Wal-Mart Stores, Inc." (as stated in the OWC judgment on the motion), had previously resulted in a September 13, 2016 OWC judgment entitling the plaintiff to prescriptions of Hydrocodone, Lyrica, Celebrex, and Voltaren gel, as prescribed by her treating physician, Dr. Blanda.[1]  It is undisputed

---

[1] Both parties acknowledge in their briefs to this court that the September 13, 2016 judgment was rendered by an OWC judge.  Further, the parties agree that the plaintiff, subsequent to the September 2016 judgment, had been obtaining these prescription from "Falcon Pharmacy" until

2

that the plaintiff's motion to compel sought a ruling only on the issue of whether she was entitled to have her employer, Wal-Mart, authorize the filling of her prescriptions at a pharmacy Wal-Mart does not own (in other words, whether the employer has a conflict of interest in requiring the use of its own pharmacy). As this issue relates to the circumstances under which the prescriptions, previously ordered reimbursable by the OWC, are to be provided to the plaintiff, she has the right to present the dispute to the OWC pursuant to the OWC's continuing jurisdiction under La. R.S. 23:1310.8.

Furthermore, the OWC judge obviously did not believe the motion was premature, since he did not rule that the motion to compel was premature under Paragraph (C) of La. R.S. 23:1314, which provides: "The workers' compensation judge shall determine whether the petition is premature and must be dismissed before proceeding with the hearing of the other issues involved with the claim." Nor was there any indication that Wal-Mart raised the prematurity of the plaintiff's motion to compel before the OWC. In fact, the plaintiff asserts in brief to this court that "Wal-Mart filed a memorandum in opposition to the motion and never filed an exception of Prematurity."

The per curiam holds that "[n]othing in La. R.S. 23:1314 requires the issue of prematurity to be raised in any specific way," and further states: "[W]e hold the general provisions of the Code of Civil Procedure . . . inapplicable in this context. Any jurisprudence to the contrary is hereby overruled." In so ruling, the per curiam relies on La. R.S. 23:1317, providing, "The workers' compensation judge shall not be bound by technical rules of evidence or procedure other than as herein provided . . . ."

---

this court's decision in **Burgess v. Sewerage & Water Board of New Orleans**, 16-2267 (La. 6/29/17), 225 So.3d 1020, after which Wal-Mart issued an August 10, 2017 notice to the plaintiff stating that it would no longer pay for prescriptions filled at Falcon Pharmacy and that she could only have her prescriptions filled at Wal-Mart or Sam's Club pharmacies.

However, Paragraph (C) of La. R.S. 23:1310.1 states that the OWC assistant secretary "shall have the authority to adopt reasonable rules and regulations, *including the rules of procedure* before the workers' compensation judges, according to the procedures established by the Administrative Procedure Act," and further requires that "[a]ll rules and regulations, properly approved and promulgated under the Administrative Procedure Act, shall be consistent with the Workers' Compensation Law and *shall be binding in the administration of that law*." (Emphasis added.) In accordance with that authority, the OWC has enacted over 300 workers' compensation regulations, including La. Admin. Code, Title 40, Part I, §5801, stating that "[t]he pleadings allowed in workers' compensation claims, whether in a principal or incidental action, shall be in writing and shall consist of petitions, *exceptions*, written motions, answers, and Office of Workers' Compensation Administration forms" (emphasis added), and La. Admin. Code, Title 40, Part I, §5823, which states that "[e]xceptions shall be governed by Code of Civil Procedure Articles 921, et seq."[2]

Given the express OWC regulations requiring that exceptions must be in writing and are to be governed by the Code of Civil Procedure, such is the law governing the parties before the OWC. As stated in La. C.C.P art. 926(A), "[t]he objections which may be raised through the dilatory exception include . . . [p]rematurity . . . ." Further, Paragraph (B) of Article 926 states that "[a]ll objections which may be raised through the dilatory exception are waived unless pleaded therein." Furthermore, this court has previously held that "[a] court may not raise a dilatory exception sua sponte; indeed, 'All objections which may be raised through the dilatory exception are waived unless pleaded therein.' " **Moreno v. Entergy Corporation**, 10-2268, pp. 2-3 (La. 2/18/11), 64 So.3d 761, 762 (per curiam).

---

[2] See also La. Admin. Code, Title 40, Part I, §6601 ("Unless otherwise provided for in these rules, any practice or procedure not in conflict with either the Workers' Compensation Act or these rules will be guided by practice and procedure provided for in the Louisiana Code of Civil Procedure.").

Accordingly, since Wal-Mart did not raise the prematurity of the plaintiff's motion to compel in the OWC, instead only raising prematurity on appellate review, the applicable law and jurisprudence would deem any objection by Wal-Mart based on prematurity waived.

In addition, the per curiam in this case states that the plaintiff's motion to compel does not present a justiciable controversy since she has not "demonstrate[d] convincingly" that there is a "real and actual dispute" as her arguments focus only on "abstract harm she might suffer in the future if Wal-Mart is permitted to restrict her to its own pharmacy." Although citing the applicable law on whether a lawsuit presents a justiciable controversy, the per curiam nevertheless misapplies the law to find a lack of justiciable controversy merely because it does not find the plaintiff's arguments convincing. The controversy between these parties is adverse - each wants to be the party who has the right to choose the health care providers in this case (the plaintiff because she wants to be in control of her health care choices, as not being able to choose her prescription medication provider may have real consequences,[3] and the defendant because it wants to control costs of treatment it

---

[3] Although **Burgess**, 16-2267 at p. 11, 225 So.3d at 1027, stated that "there is no meaningful difference relative to which pharmacy is used to dispense a prescription drug that would mandate employee choice under the LWCA," a pharmacist does more that merely dispense pills. As stated in La. Admin. Code, Title 46, Part LIII, §515(A), a pharmacist is required to "review the patient record and each prescription presented for dispensing for purposes of enhancing pharmacy care and therapeutic outcomes by recognizing the following potential situations: 1. drug over-utilization or under-utilization; 2. therapeutic duplication; 3. drug-disease contraindications; 4. drug-drug interactions; 5. inappropriate drug dosage or treatment duration; 6. drug-allergy interactions; or 7. clinical abuse/misuse." Upon recognizing any of these situations, the pharmacist "using professional judgment" is required to "take appropriate actions." La. Admin. Code, Title 46, Part LIII, §515(B). A pharmacist is also required, by La. Admin. Code, Title 46, Part LIII, §517(A), to conduct "[p]atient counseling," which involves "the effective communication by a pharmacist of information to the patient or caregiver, in order to ensure proper use of drugs and devices." Paragraph (E) of La. Admin. Code, Title 46, Part LIII, §517, states that a pharmacist should counsel the patient "face-to-face," when possible or appropriate; if not, a pharmacist should "exercise his professional judgment in the selection of alternative methods, including but not limited to, telephonic or electronic communication with the patient or caregiver." "The pharmacist may supplement oral information with written information, but shall not use written information alone to fulfill the counseling requirement." La. Admin. Code, Title 46, Part LIII, §517(C). "At a minimum, the pharmacist should be convinced that the patient or caregiver is informed of the following: 1. name and description of the medication; 2. dosage form, dosage, route of administration, and duration of therapy; 3. special directions and precautions for preparation, administration, and use by the patient; 4. common severe side effects or adverse effects or interactions and therapeutic contraindications that may be encountered, including their avoidance,

has to pay for); a judgment can be granted which gives one party or the other the relief they have requested; and this is an actual dispute, not merely an abstract legal argument. Simply because one side is more likely to prevail over the other does not for that reason alone mean there is no justiciable controversy.

For these reasons, I dissent from the per curiam rulings that the plaintiff's motion to compel was premature when filed in the OWC and did not present a justiciable controversy.

On the merits of the matter asserted in the plaintiff's motion to compel, I agree with the appellate court that a conflict of interest arises when an injured employee's employer appoints itself as a health care provider for the injured employee, without the agreement of the employee. It is also contrary to the policy expressed in La. R.S. 23:1142, providing that "each health care provider[4] may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment[5] *without the mutual consent of the* payor and the *employee* . . . ." (Emphasis added.) Section 1142 allows an employee to consent to and obtain nonemergency diagnostic testing or treatment, without a payor's consent, when the amount does not exceed

---

and the action required in the event of their occurrence; 5. techniques for self-monitoring drug therapy; 6. proper storage of the medication; 7. prescription refill information, if any; and 8. the action to be taken in the event of a missed dose." La. Admin. Code, Title 46, Part LIII, §517(B). As recognized by the dissenting judge in **Bordelon v. Lafayette Consolidated Government**, 14-0304 (La. App. 3 Cir. 10/1/14), 149 So.3d 421, 426-27 (Saunders, J., dissenting), writ denied, 14-2296 (La. 2/6/15), 158 So.3d 816 (Hughes, J., would grant per J. Saunder's dissent), it is simply common knowledge that pharmacists provide more than merely ministerial services, citing the importance of patient counseling in advising patients of any potential drug interactions, of any potential side effects, of any recommendations concerning how and when to take medication, and for communicating with prescribers when a prescription order is unclear or potentially harmful for the patient. Judge Saunders, in **Bordelon**, opined that these tasks are much more than merely ministerial; they are an important part of a patient's treatment and require advanced knowledge, a high-level of individual skill, and concern for the comfort of the patient. **Id.**

[4] See La. R.S. 23:1021(6) (" 'Health care provider' means ... a person, corporation, facility, or institution licensed by the state to provide health care or professional services as a ... *pharmacist*...." (Emphasis added.)

[5] "Treatment" includes "medications." See La. Admin. Code, Title 40, Part I, Subpart 2, "Medical Guidelines," §2009(G)(5), §2021(H)(5), §2111(C)(6), §2131(C)(6), §2211(H)(5), §2225(D)(4), §2311(G)(7), §2325(F)(6) (all listing "medications" as "treatment").

$750; however, when the amount exceeds $750 both the payor and the employee must consent. Importantly, the consent of the employee is required, regardless of amount.

As a dissenter to this court's decision in **Burgess v. Sewerage & Water Board of New Orleans**, 16-2267 (La. 6/29/17), 225 So.3d 1020, I believe the court should re-examine the position stated therein. Although La. R.S. 23:1203(A) delineates the obligation of an employer to "furnish" an injured worker "all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal," this statutory language does not necessarily give the employer the right to choose a pharmacy for the employee's use, and this court should not by "judicial edict" declare that "the choice of pharmacy in a workers' compensation case belongs to the employer" when the legislature has not evidenced the intent to delegate such authority to the employer. **Id.** (Genovese, J., dissenting). Justice Genovese noted that the key word in La. R.S. 23:1203 is "furnish," which carries the dictionary definition of "to provide" or "to supply," and while the use of "furnish" *could* be literally interpreted to mean the employer itself would have to provide or supply necessary prescription medication directly to the employee, it is not the clear intent of the legislature to allow an employer to dictate the employee's drug provider. **Id.** As Justice Genovese stated, "furnish" should be construed, for purposes of Workers' Compensation Law, to mean "to be responsible for" the payment of prescription medication expenses. **Id.**

In **Burgess**, this court held that "the employer has the right to choose the pharmacy to furnish necessary prescription drugs to an injured employee in a workers' compensation case." **Burgess v. Sewerage & Water Board of New Orleans**, 16-2267 at p. 9, 225 So.3d at 1026. In so holding, this court reasoned that "[t]o extend the legislatively-granted employee choice of treating physician to

7

include the choice of pharmacy can only be accomplished by giving an impermissibly expansive reading to the provisions of La. R.S. 23:1203(A)[6] and La. R.S. 23:1121,[7] thus broadening the employee's rights in contravention of La. R.S. 23:1020.1(D)."[8]  **Id.**, 16-2267 at p. 13, 225 So.3d at 1028.  The **Burgess** opinion further stated:  "Had the legislature intended the employee to have the choice of pharmaceutical provider in La. R.S. 23:1203(A), the legislature could have easily provided for that choice as it provided for the choice of physician in La. R.S. 23:1121."  **Id.**, 16-2267 at p. 10, 225 So.3d at 1027.

The reasoning of the **Burgess** opinion seems to imply that the resolution of the question of who has the right to choose a particular health care provider (other than a treating physician in any field or specialty, who the injured employee has the express right to choose under La. R.S. 23:1121) must be binary and fixed in every case - either the employee always chooses or the employer always chooses.  Under such a scenario and after **Burgess**, the employer will have the right to choose every

---

[6] "[T]the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal...."  La. R.S. 23:1203.

[7] "The employee shall have the right to select one treating physician in any field or specialty...."  La. R.S. 23:1121.

[8] Paragraph (D) of La. R.S. 23:1020.1 states:

> The Louisiana Workers' Compensation Law shall be construed as follows:
> (1) The provisions of this Chapter are based on the mutual renunciation of legal rights and defenses by employers and employees alike; therefore, it is the specific intent of the legislature *that workers' compensation cases shall be decided on their merits.*
> (2) Disputes concerning the facts in workers' compensation cases shall not be given a broad, liberal construction in favor of either employees or employers; *the laws* pertaining to workers' compensation *shall be construed* in accordance with the basic principles of statutory construction and *not in favor of either employer or employee.*
> (3) According to Article III, Section 1 of the Constitution of Louisiana, the legislative powers of the state are vested solely in the legislature; therefore, when the workers' compensation statutes of this state are to be amended, the legislature acknowledges its responsibility to do so. *If the workers' compensation statutes are to be liberalized, broadened, or narrowed, such actions shall be the exclusive purview of the legislature.*

(Emphasis added.)

8

imaginable type of heath care provider for an injured employee's treatment, except his or her treating physician in any field or specialty. The effect of **Burgess** in this regard is clearly a "broaden[ing]" of Workers' Compensation Law, in violation of La. R.S. 23:1020.1(D)(3), and the **Burgess** resolution favors the employer over the employee, in violation of La. R.S. 23:1020.1(D)(2).

However, instead of presenting a simple binary choice, the failure of the Legislature to designate an express right, in either the employer or the employee, to choose a health care provider (in any case except a treating physician in any field or specialty, pursuant to La. R.S. 23:1121) appears to be an intentional omission, which under the detailed Workers' Compensation statutory and regulatory framework allows for greater flexibility, depending upon the particular facts and circumstances of each case. Such a construction is more in keeping with the policy considerations set forth in La. R.S. 23:1020.1(D)(1), (2), and (3) - that each workers' compensation case be decided on its own merits; that workers' compensation laws be construed in accordance with the basic principles of statutory construction and not in favor of either employer or employee; and that if the workers' compensation statutes are to be liberalized, broadened, or narrowed, such actions shall be within the exclusive purview of the legislature. See also La. C.C. art. 10 ("When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law."); La. C.C. art. 12 ("When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole."); La. C.C. art. 13 ("Laws on the same subject matter must be interpreted in reference to each other.").

First, it should be noted that La. R.S. 23:1203(B) declares: "The *obligation* of the employer *to furnish* such care, services, treatment, *drugs*, and supplies,

9

whether in state or out of state, *is limited to the reimbursement* . . . ."[9]  (Emphasis added.)  In addition, La. R.S. 23:1020.1(B) provides:  "The legislature declares that the purpose of this Chapter [Chapter 10. Workers' Compensation] is all of the following:  . . . (2) *To pay* the medical expenses that are due to all injured workers pursuant to this Chapter."  (Emphasis added.)  Providing "reimbursement" and being required "to pay" for an injured worker's "care, services, treatment, drugs, and[/or] supplies" involve the concept of providing *funding* for the medical expenses, rather authorizing the payor to *procure* the needed "care, services, treatment, drugs, and[/or] supplies."

Furthermore, La. R.S. 23:1142, entitled "Approval of health care providers; fees," provides in Paragraph (B)(1)(a):

> Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee *as provided by regulation*.  Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer's workers' compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.

(Emphasis added.)

As indicated hereinabove, a plain reading of La. R.S. 23:1142(B)(1)(a) indicates a legislative intent to authorize an injured employee to obtain $750 in "nonemergency diagnostic testing or treatment" from a "health care provider" without the consent of the "payor."  A "health care provider" is defined by LSA-R.S. 23:1021(6) to include a "pharmacist," and "treatment" includes "medications," as indicated hereinabove.  Conversely, La. R.S. 23:1142(B)(1)(a) only authorizes

---

[9]  See *Reimbursement*, **Black's Law Dictionary** (11th ed. 2019) ("1. Repayment. 2. Indemnification. — reimburse, vb.").  See also *Indemnification*, **Black's Law Dictionary** (11th ed. 2019) ("1. The action of compensating for loss or damage sustained. 2. The compensation so made. — indemnificatory, adj.").

nonemergency treatment, *in excess of* $750, if the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.[10]

It is not logical to suppose that, after the Legislature has authorized, in La. R.S. 23:1142(B), the injured employee to choose, without the consent of the payor, the health care provider(s) for purposes of the first $750 in treatment, that beginning with the 751st dollar of treatment and thereafter, choice of the health care provider of medications (the pharmacy or pharmacist) would switch to the payor, who would thereafter have the option of choosing the pharmacy, requiring at the payor's whim that the injured employee move his prescription(s) to a different pharmacy. The only requirement expressly imposed by La. R.S. 23:1142 on the 751st dollar of treatment and thereafter is that the injured employee and the payor must have "***agreed upon the diagnostic testing or treatment*** by the health care provider." (Emphasis added.) The statute does not expressly require that the employee and the payor agree on ***who*** is to provide the "diagnostic testing or treatment"; agreement is apparently only required as to the propriety of the testing or treatment itself.

The wording of La. R.S. 23:1142 lends itself more to the implication that "the health care provider" continues to be the one selected by the injured employee, rather than to allowing the employer/payor to change an initial selection of a health care provider made by an injured employee.

That the Legislature intended the payor and the employee to resolve by consent issues related to diagnostic testing and treatment by a health care provider is reinforced by the passage of 2012 La. Acts, No. 235, through which the Legislature added the following provisions to R.S. 23:1142:

> (A) ... (2) "Utilization review company" shall mean the company or entity which contracts with the payor, and which entity reviews the claimant's medical records and information and makes the determination of medical necessity in accordance with this Chapter, for the purposes of assisting the payor with the authorization of the

---

[10] See also La. R.S. 23:1142(C)(1) ("In no event shall prior consent be required for any emergency procedure or treatment deemed immediately necessary by the treating health care provider.").

11

claimant's medical care, services and treatment requested pursuant to this Chapter.

\* \* \*

(B) ... (1) ... (b)(i) The payor may contract with a utilization review company to assist the payor in determining if the request for nonemergency diagnostic testing or treatment, in an amount which exceeds seven hundred fifty dollars, is a medical necessity as provided pursuant to this Chapter.

(ii) A medical necessity determination by a utilization review company and the payor's consent to authorize the requested nonemergency diagnostic testing and treatment shall require only a review of the claimant's medical records and shall not require an examination of the employee.

In addition, La. R.S. 23:1310.3 was amended by 2010 La. Acts, No. 53 to add, in Paragraphs (D) and (E), provisions for the mediation of disputes, as to any claim for benefits, the controversion of entitlement to benefits, or other relief under Workers' Compensation Law, "[u]pon joint request of the parties, or upon order of the presiding workers' compensation judge." Mediators are available through the OWC or private mediators may be used. See La. R.S. 23:1310.3(D)(1)(a)-(b); La. Admin. Code, Title 40, Part I, §5813(A) and (E). Further, an OWC mediator may be requested even before a disputed claim for compensation is filed to initiate an OWC proceeding. See La. Admin. Code, Title 40, Part I, §5813(D).

In 2013, the Legislature passed Act No. 337, and in Section 2 the Act was declared to be "remedial, curative, and procedural and therefore is to be applied retroactively as well as prospectively." Act 337 enacted, among other changes to the Workers' Compensation Law, La. R.S. 23:1201.1, which, inter alia, provides an expedited process before the OWC for the "controversion[11] of . . . medical

---

[11] "Controversion" is not defined in the Workers' Compensation Law; however, its usage makes clear that the meaning ascribed to the word, as it appears in La. R.S. 23:1201.1(A) (Upon ... any ... *controversion* of compensation or medical benefits for any reason, including but not limited to issues of medical causation, compensability of the claim, or issues arising out of R.S. 23:1121, 1124, 1208, and 1226....") (emphasis added) and La. R.S. 23:1310.3(A) (A claim for benefits, the *controversion* of entitlement to benefits, or other relief ... shall be initiated by the filing of the appropriate form with the office of workers' compensation administration....) (emphasis added), is as defined in Black's Law Dictionary: "To dispute or contest...." See *Controvert*, **Black's Law Dictionary** (11th ed. 2019). See also La. R.S. 23:1201(F) (Except as otherwise provided in this Chapter, failure to provide payment ... shall result in the assessment of a penalty ... for each *disputed* claim; however, ... [t]his Subsection shall not apply if the claim is reasonably *controverted* ....") (emphasis added).

12

benefits."

Paragraphs (A)(4) and (5) of La. R.S. 23:1201.1 require a payor, who controverts, "for any reason," a claim for medical benefits made by an injured employee, to send a "Notice of . . . Modification, Suspension, Termination, or Controversion of . . . Medical Benefits" to the injured employee, by certified mail, "on or before the effective date of a modification, suspension, termination, or controversion," as well as to send a copy of the notice to the OWC.

Paragraph (F)(1) of La. R.S. 23:1201.1 requires the injured employee, who disagrees with any information provided on the notice form sent by the payor, to notify the payor of the basis for disagreement. The employee is prohibited from filing a "disputed claim . . . regarding any such disagreement" unless the notice required by La. R.S. 23:1201.1 has been sent to the payor. La. R.S. 23:1201.1(F)(2). A payor, who pays (subject to further investigation and subsequent controversion) the benefit that the employee claims is due in his or her La. R.S. 23:1201.1(F)(1) response, within seven business days of receipt of the employee's demand, will be exempt from any claim for penalties or attorney fees arising from the disputed modification, suspension, termination, or controversion. See La. R.S. 23:1201.1(G) and (I)(1).

Paragraph (H) of La. R.S. 23:1201.1 authorizes a payor to request a "preliminary determination hearing," if the payor has complied with La. R.S. 23:1201.1(A) through (E) or accepted the claim as compensable subject to further investigation and subsequent controversion, under La. R.S. 23:1201.1(I)(1). However, a payor who is not entitled to a preliminary determination hearing or, if entitled, fails to request a preliminary determination, may be subject to penalties and attorney fees upon a La. R.S. 23:1201.1(K)(8) hearing or following a trial on the

13

merits pursuant to La. R.S. 23:1201. See La. R.S. 23:1201.1(I)(1). If a preliminary determination hearing is requested and granted, it is required to be held within ninety days of a OWC judge-initiated scheduling conference. See La. R.S. 23:1201.1(J). Following a preliminary determination, in certain circumstances and on motion of a party, the matter may proceed to a trial on the merits. See La. R.S. 23:1201.1(K).

Thus, La. R.S. 23:1201.1 provides an efficient process for communication between the employer/payor, the injured employee, and the OWC when the employer/payor wishes to modify, suspend, terminate, or controvert any medical benefit for any reason and to obtain a prompt resolution of the dispute. It would seem likely, when the Legislature enacted La. R.S. 23:1201.1 and set forth the procedures applicable to the controversion of medical benefits, that it intended to include any dispute over who would be selected as a health care provider for "diagnostic testing and treatment" (such as prescription medications) over $750, at issue in La. R.S. 23:1142, when a payor and an injured employee do not both consent. Also, the provisions of La. R.S. 23:1201.1 make it disadvantageous for either the injured employee or the employer/payor to choose to not comply with La. R.S. 23:1201.1, in order to ensure compliance with the procedures set forth. Further, La. R.S. 23:1201.1 appears to take up where La. R.S. 23:1142 leaves off, in that on the 751st dollar of treatment, the payor must either consent to the testing or treatment with the health care provider previously selected by the injured employee or commence the process set forth in La. R.S. 23:1201.1.

We note **Burgess** states that, although "La. R.S. 23:1142(B) requires a health care provider to have the consent of the employee and the payor in order to receive payment in excess of $750 for nonemergency care," the statute "does not supply a specific formula by which the payor is to signify his consent." **Burgess v. Sewerage & Water Board of New Orleans**, 16-2267 at p. 16, 225 So.3d at 1030 (footnote omitted).

14

To the contrary, the law does supply a specific formula. La. R.S. 23:1142 adds the additional requirement that this process be conducted "as provided by regulation." This is in accord with La. R.S. 23:1310.1(C), as discussed hereinabove, which authorizes the OWC assistant secretary to adopt rules and regulations to govern the administration of the Workers' Compensation Law.

The OWC assistant secretary is given extensive powers, duties, and functions relative to the implementation and enforcement of the Workers' Compensation Law, as set forth in La. R.S. 23:1291(B), including: to establish and promulgate in accordance with the Administrative Procedure Act such rules and regulations governing the administration of the Workers' Compensation Law and the operation of the OWC as may be deemed necessary and which are not inconsistent with the laws of this state; to enforce the reimbursement schedule established for drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal; to require the use of appropriate procedures, including a utilization review process that establishes standards of review, for determining the necessity, advisability, and cost of proposed or already performed hospital care or services, medical or surgical treatment, or any nonmedical treatment recognized by the laws of this state as legal; and to resolve disputes over the necessity, advisability, and cost of same.

The OWC rules and regulations set forth in the Administrative Code supplement Workers' Compensation statutes, stating in La. Admin. Code, Title 40, Part I, §101(A), that "[t]he purpose of the rules and regulations is to define the responsibilities and rights of the employee, employer and the carrier in the Administration of Workers' Compensation in Louisiana." In addition, §101(B) states that "[t]he rules are intended to expedite the receipt of benefits by the injured worker; to insure that the proper rate of compensation is paid; to aid in the rehabilitation of the injured worker; to provide for collection of statistical data; to

15

provide for review of safety plans; and, where necessary, to facilitate the resolution of disputes regarding benefits." See also La. Admin. Code, Title 40, Part I, § 5501(A) ("The purpose of these rules is to govern the practice and procedures before the Workers' Compensation Court which is a statewide court having jurisdiction of claims for workers' compensation benefits, the controversion of entitlement to benefits and other relief under the Workers' Compensation Act. These rules are designed to facilitate the equitable, expeditious and simple resolution of workers' compensation disputed claims filed with the Court."); La. Admin. Code, Title 40, Part I, §2701 (entitled "Statement of Policy").

In furtherance of these responsibilities, the OWC promulgated La. Admin. Code, Title 40, Part I, §2715, which explicitly supplements the provisions of La. R.S. 23:1142, stating:

> A. Purpose. It is the purpose of this Section to facilitate the management of medical care delivery, assure an orderly and timely process in the resolution of care-related disputes; identify the required medical documentation to be provided to the carrier/self-insured employer to initiate a request for authorization as provided in R.S. 23:1203.1(J); and provide for uniform forms, timeframes, and terms for suspension of prior authorization process, withdrawal of request for authorization, authorization, denial, and dispute resolution in accordance with R.S. 23:1203.1.
> B. Statutory Provisions
> 1. Emergency Care
> a. In addition to all other utilization review rules and procedures, R.S. 23:1142 provides that no prior consent by the carrier/self-insured employer is required for any emergency medical procedure or treatment deemed immediately necessary by the treating health care provider. Any health care provider who authorizes or orders diagnostic testing or treatment subsequently held not to have been of an emergency nature shall be responsible for all of the charges incurred in such testing or treatment. Such health care provider shall bear the burden of proving the emergency nature of the diagnostic testing or treatment.
> b. Fees for those services of the health care provider held not to have been of an emergency nature shall not be an enforceable obligation against the employee or the employer or the employer's workers' compensation insurer unless the employee and the payor have agreed upon the treatment or diagnostic testing by the health care provider.
> 2. Non-Emergency Care. In addition to all other utilization review rules and procedures, the law (R.S. 23:1142) establishes a monetary limit for non-emergency medical care. No health care provider shall incur more than a total of $750 in non-emergency

diagnostic testing or treatment without the mutual consent of the carrier/self-insured employer and the employee. The statute further provides significant penalties for a carrier's/self-insured employer's arbitrary and capricious refusal to approve necessary care beyond that limit.

3. Medical Treatment Schedule

a. In addition to all other utilization review rules and procedures, R.S. 23:1203.1 provides that after the promulgation of the medical treatment schedule, medical care, services, and treatment due, pursuant to R.S. 23:1203 et seq., by the employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule.

b. Pursuant to R.S. 23:1203.1(I), medical care, services, and treatment that varies from the promulgated medical treatment schedule shall also be due by the employer when it is demonstrated to the medical director of the Office of Workers' Compensation by a preponderance of the scientific medical evidence, that a variance from the medical treatment schedule is reasonably required to cure or relieve the injured worker from the effects of the injury or occupational disease given the circumstances.

c. Pursuant to R.S. 23:1203.1(M), with regard to all treatment not covered by the medical treatment schedule, all medical care, services, and treatment shall be in accordance with Subsection D of R.S. 23:1203.1.

d. Except as provided pursuant to D.2, all requests for authorization of care beyond the statutory non-emergency monetary limit of $750 are to be presented to the carrier/self-insured employer. In accordance with these Utilization Review Rules, the carrier/self-insured employer or a utilization review company acting on its behalf shall determine if such request is in accordance with the medical treatment schedule. If the request is denied or approved with modification and the health care provider determines to request a variance from the medical director, then a LWC-WC-1009 shall be filed as provided in Subsection G of this Section.

e. Disputes shall be filed by any aggrieved party on a LWC-WC-1009 within 15 calendar days of receipt of the denial or approval with modification of a request for authorization. The medical director shall render a decision as soon as practicable, but in no event later than 30 calendar days from the date of filing. The decision shall determine whether:

i. the recommended care, services, or treatment is in accordance with the medical treatment schedule; or

ii. a variance from the medical treatment schedule is reasonably required; or

iii. the recommended care, services, or treatment that is not covered by the medical treatment schedule is in accordance with another state's adopted guideline pursuant to Subsection D of R.S. 23:1203.1.

f. In accordance with LAC 40:I.5507.C, any party feeling aggrieved by the R.S. 23:1203.1(J) determination of the medical director shall seek a judicial review by filing a Form LWC-WC-1008 in a workers' compensation district office within 15 calendar days of the date said determination is mailed to the parties. A party filing such

appeal must simultaneously notify the other party that an appeal of the medical director's decision has been filed. Upon receipt of the appeal, the workers' compensation judge shall immediately set the matter for an expedited hearing to be held not less than 15 days nor more than 30 calendar days after the receipt of the appeal by the office. The workers' compensation judge shall provide notice of the hearing date to the parties at the same time and in the same manner.

g. R.S. 23:1203.1(J) provides that after a health care provider has submitted to the carrier/self-insured employer the request for authorization and the information required pursuant to this Section, the carrier/self-insured employer shall notify the health care provider of their action on the request within five business days of receipt of the request.

C. Minimum Information for Request of Authorization

1. Initial Request for Authorization. The following criteria are the minimum submission by a health care provider requesting care beyond the statutory non-emergency medical care monetary limit of $750 and will accompany the LWC-WC-1010:

a. history provided to the level of the condition and as provided in the medical treatment schedule;

b. physical findings/clinical tests;

c. documented functional improvements from prior treatment, if applicable;

d. test/imaging results; and

e. treatment plan including services being requested along with the frequency and duration.

2. To make certain that the request for authorization meets the requirements of this Subsection, the health care provider should review the medical treatment schedule for each area(s) of the body to obtain specific detailed information related to the specific services or diagnostic testing that is included in the request. Each section of the medical treatment schedule contains specific recommendations for clinical evaluation, treatment and imaging/testing requirements. The medical treatment guidelines can be viewed on Louisiana's Workforce Commission website. The specific URL is http://www.laworks.net/WorkersComp/OWC_MedicalGuidelines.asp.

3. Subsequent Request for Authorizations. After the initial request for authorization, subsequent requests for additional diagnostic testing or treatment does not require that the healthcare provider meet all of the initial minimum requirements listed above. Subsequent requests require only updates to the information of Subparagraph 1.a-e above. However such updates must demonstrate the patient's current status to document the need for diagnostic testing or additional treatment. A brief history, changes in clinical findings such as orthopedic and neurological tests, and measurements of function with emphasis on the current, specific physical limitations will be important when seeking approval of future care. The general principles of the medical treatment schedule are:

a. the determination of the need to continue treatment is based on functional improvement; and

b. the patient's ability (current capacity) to return to work is needed to assist in disability management.

D. Submission and Process for Request for Authorization

1. Except as provided pursuant to D.2., to initiate the request for authorization of care beyond the statutory non-emergency medical care monetary limit of $750 per health care provider, the health care provider shall submit LWC-WC-1010 along with the required information of this Section by fax or email to the carrier/self insured employer.

* * *

4. The carrier/self-insured employer shall provide to the OWC a fax number and/or email address to be used for purposes of these rules and particularly for LWC-WC-1010 and 1010A. If the fax number and/or email address provided is for a utilization review company contracted with the carrier/self-insured employer, then the carrier/self-insured employer shall provide the name of the utilization review company to the OWC. All carrier/self-insured employer fax numbers and/or email addresses provided to the OWC will be posted on the office's website at www.laworks.net. If the fax number or e-mail address is for a contracted utilization review company, then the OWC will also post on the web the name of the utilization review company. When requesting authorization and sending the LWC-WC-1010 and 1010A, the health care provider shall use the fax number and/or email address found on the OWC website.

5. Pursuant to R.S. 23:1203.1, the five business days to act on the request for authorization does not begin for the carrier/self-insured employer until the information of Subsection C and LWC-WC-1010 is received. In the absence of the submission of such information, any denial of further non-emergency care by the carrier/self-insured employer is prima facie, not arbitrary and capricious.

\* \* \*

F. Appeal of Suspension of Prior Authorization Process

1. If the health care provider disagrees with the suspension of prior authorization process, the provider, within five business days of receipt of the suspension, shall file an appeal with the medical services section of the OWC. The appeal shall include:

a. a copy of the LWC-WC-1010 submitted to the carrier/self-insured employer. The health care provider should complete the appropriate section of the form indicating that an appeal is being requested; and

b. a copy of LWC-WC-1010A; and

c. a copy of all information previously submitted to the carrier/self-insured employer.

2. The medical services section shall, within 10 business days of receipt of the filed LWC-WC-1010:

a. determine whether the information provided satisfied the provisions of Subsection C of this Section; and

b. issue a written determination to the health care provider, claimant and carrier/self-insured employer.

3. If the medical services section determines that the requested information was not provided, then the health care provider will be required to submit the information to the carrier/self-insured employer within five business days of receipt of the decision of the medical services section.

a. If the information is provided as required by decision of the medical services section, the carrier/self-insured employer shall have five business days to act on the request for authorization pursuant to R.S. 23:1203.1(J) and these rules. Subsection G of this Section provides the rules regarding a request for authorization being approved, approved with modification, or denied.

b. Failure of the health care provider to provide the information within five business days of receipt of the decision of the medical services section shall result in a withdrawal of the request for authorization without further action by the OWC or the carrier/self-insured employer. In order to obtain authorization, the medical provider will be required to initiate a new request for authorization pursuant to this Section.

4. If the medical services section determines that the requested information was provided, then within five business days of receipt of the decision of the medical services section decision, the carrier/self-insured employer shall act on the request for authorization pursuant to R.S. 23:1203.1(J) and these rules with the information as previously provided. Subsection G of this Section provides the rules regarding a request for authorization being approved, approved with modification, or denied.

5. Failure of the carrier/self-insured employer to act on the request within the five business days will be deemed a denial of the request for authorization. A health care provider, claimant, or claimant's attorney if represented who chooses to appeal a denial pursuant to this subparagraph shall file a LWC-WC-1009 pursuant to Subsection J of this Section.

6. A request for authorization that is deemed denied pursuant to this subparagraph may be approved by the carrier/self-insured employer within 10 calendar days of being deemed denied. The approval will be indicated in section 3 of LWC-WC-1010. The medical director shall dismiss any appeal that may have been filed by a LWC-WC-1009. The carrier/self-insured employer shall be given a presumption of good faith regarding the decision to change the denial to an approval provided that the LWC-WC-1010 which indicates "approved" in section 3 is faxed or emailed within the 10 calendar days.

G. Approval or Denial of Authorization for Care

1. Request for authorization covered by the medical treatment schedule. Upon receipt of the LWC-WC-1010 and the required medical information in accordance with this Section, the carrier/self-insured employer shall have five business days to notify the health care provider of the carrier/self-insured employer's action on the request. Based upon the medical information provided pursuant to this Section the carrier/self-insured employer will determine whether the request for authorization is in accordance with the medical treatment schedule:

a. the carrier/self-insured employer will return to the health care provider Form 1010, and indicate in the appropriate section on the form that "The requested treatment or testing is approved" if the request is in accordance with the medical treatment schedule; or

b. the carrier/self-insured employer will return to the health care provider, claimant, and the claimant's attorney if one exists, the LWC-WC-1010, and indicate in the appropriate section on the form "The requested treatment or testing is approved with modification" if the carrier/self-insured employer determines that modifications are necessary in order for the request for authorization to be in accordance with the medical treatment schedule, or that a portion of the request for authorization is denied because it is not in accordance with the medical treatment schedule. The carrier/self insured employer shall include with the LWC-WC-1010 a summary of reasons why a part of the request for

authorization is not in accordance with the medical treatment schedule and explain any modification to the request for authorization. The LWC-WC-1010 and the summary of reasons shall be faxed or emailed to the health care provider and to the claimant attorney, if any. On the same business day, a copy of the LWC-WC-1010 and the summary of reasons shall also be sent by regular mail to the claimant's last known address; or

c. the carrier/self-insured employer will return to the health care provider, the claimant, and the claimant's attorney if one exists, the LWC-WC-1010, and indicate in the appropriate section on the form "the requested treatment or testing is denied" if the carrier/self-insured employer determines that the request for authorization is not in accordance with the medical treatment schedule. The carrier/self-insured employer shall include with the LWC-WC-1010 a summary of reasons why the request for authorization is not in accordance with the medical treatment schedule. The LWC-WC-1010 and the summary of reasons shall be faxed or mailed to the health care provider and to the claimant attorney, if any. On the same business day, a copy of the LWC-WC-1010 and the summary of reasons shall also be sent by regular mail to the claimant's last known address.

2. Request for Authorization not Covered by the Medical Treatment Schedule. Requests for authorization of medical care, services, and treatment that are not covered by the medical treatment schedule in accordance to R.S. 23:1203.1(M), must follow the same prior authorization process established for all other requests for medical care, services, and treatment. A request for authorization that is not covered by the medical treatment schedule exists when the requested care, services, or treatment are for a diagnosis not addressed by the medical treatment schedule. The health care Provider requesting care, services, or treatment that is not covered by the medical treatment schedule may submit documentation sufficient to establish that the request is in accordance with R.S. 23:1203.1(D). After timely receipt of the LWC-WC-1010, the submitted documentation if any, and the required medical information in accordance with this Section, the carrier/self-insured employer shall determine whether the request for authorization is in accordance with R.S. 23:1203.1(D). In making this determination, the carrier/self-insured employer shall review the submitted documentation, but may apply another guideline that meets the criteria of R.S. 23:1203.1(D). The carrier/self-insured employer has five business days to notify the health care provider of the carrier/self-insured employer's action on the request:

a. the carrier/self-insured employer will return to the health care provider the LWC-WC-1010, and indicate in the appropriate section on the form that "The requested treatment or testing is approved" if the request is in accordance with R.S. 23:1203.1(D); or

b. the carrier/self-insured employer will return to the health care provider, claimant, and the claimant's attorney if one exists, the LWC-WC-1010, and indicate in the appropriate section on the form "The requested treatment or testing is approved with modification" if the carrier/self-insured employer determines that modifications are necessary in order for the request for authorization to be in accordance with R.S. 23:1203.1(D), or that a portion of the request for authorization is denied because it is not in accordance with R.S.23:1203.1(D). The

carrier/self insured employer shall include with the LWC-WC-1010 a summary of reasons why a part of the request for authorization is not in accordance with R.S. 23:1203.1(D). The LWC-WC-1010 and the summary of reasons shall be faxed or emailed to the health care provider and to the claimant attorney, if any. On the same business day a copy of the LWC-WC-1010 and the summary of reasons shall also be sent by regular mail to the claimant's last known address; or

c. the carrier/self-insured employer will return to the health care provider, the claimant, and the claimant's attorney if one exists, the LWC-WC-1010, and indicate in the appropriate section on the form "the requested treatment or testing is denied" if the carrier/self-insured employer determines that the request for authorization is not in accordance with R.S. 23:1203.1(D). The carrier/self-insured employer shall include with the LWC-WC-1010 a summary of reasons why the request for authorization is not in accordance with R.S. 23:1203.1(D). The LWC-WC-1010 and the summary of reasons shall be faxed or emailed to the health care provider and to the claimant attorney, if any. On the same business day a copy of the LWC-WC-1010 and the summary of reasons shall also be sent by regular mail to the claimant's last known address.

3. Summary of Reasons. The summary of reasons provided by the carrier/self-insured employer with the approval with modification or denial shall include:

i. the name of the employee;

ii. the date of accident;

iii. the name of the health care provider requesting authorization;

iv. the decision (approved with modification, denied);

v. the clinical rationale to include a brief summary of the medical information reviewed;

vi. the criteria applied to include specific references to the medical treatment schedule, or to the guidelines adopted in another state if the requested care, services or treatment is not covered by the medical treatment schedule; and

vii. a Section labeled "Voluntary Reconsideration" pursuant to Paragraph I.2 of this Section that includes a phone number that will allow the health care provider to speak to a person with the carrier/self-insured employer or its utilization review company with authority to reconsider a denial or approval with modification.

4. Upon receipt of the LWC-WC-1010 and the required medical information in accordance with this Section, the carrier/self-insured employer shall have five business days to notify the health care provider of the carrier/self-insured employer's action on the request. Based upon the medical information provided pursuant to this Section, and other information known to the carrier/self-insured employer at the time of the request for authorization, the carrier will return to the health care provider, claimant, and claimant's attorney if one exists, the LWC-WC-1010 and indicate in the appropriate section on the form "the requested treatment or testing is denied because:

a. "the request for authorization or a portion thereof is not related to the on-the-job injury;" or

b. "the claim is non-compensable;" or

c. "other" and provide a brief explanation for the basis of denial.

5. The LWC-WC-1010 and the summary of reasons shall be

faxed or emailed to the health care provider and the claimant attorney, if any. On the same business day a copy of the LWC-WC-1010 and the summary of reasons shall also be sent by regular mail to the claimant's last known address.

H. Failure to respond by carrier/self-insured employer. a carrier/self-insured employer who fails to return LWC-WC-1010 with section 3 completed within the five business days to act on a request for authorization as provided in this Section is deemed to have denied such request for authorization. A health care provider, claimant, or claimant's attorney if represented who chooses to appeal a denial pursuant to this Subparagraph shall file a LWC-WC-1009 pursuant to Subsection J of this Section.

I. Reconsideration Prior to LWC-WC-1009 Decision

1. R.S. 23:1203.1(L) provides that it is the intent of the legislature that, with establishment of the medical treatment schedule, medical and surgical treatment, hospital care, and other health care provider services shall be delivered in an efficient and timely manner to injured employees.

2. In furtherance of that goal, the LWC-WC-1010 and the summary of reasons provided by the carrier/self-insured employer with the denial or approved with modification will include a statement that the health care provider is encouraged to contact the carrier/self insured employer to discuss reconsideration of the denial or approval with modification. The carrier/self insured employer shall include on the summary of reasons a section labeled "voluntary reconsideration," and include a phone number that will allow the health care provider to speak to a person with the carrier/self-insured employer or its utilization review company with authority to reconsider the previous denial or approval with modification.

3. Reconsideration after denied or approved with modification. If the carrier/self-insured employer determines that the requested care should now be approved, it will return to the health care provider, the claimant, and the claimant's attorney if one exists within 10 calendar days of the denial or approval with modification, the LWC-WC-1010, and in the appropriate section on the form indicate "the prior denied or approved with modification request is now approved." Such approval ends the utilization review process as it relates to the request. A LWC-WC-1009 or 1008 shall not be filed regarding such request. The carrier/self-insured employer shall be given a presumption of good faith regarding the decision to change its decision of denied or approved with modification to approved after discussing the request with the health care provider.

4. Reconsideration after deemed denied due to failure to respond. A request for authorization that is deemed denied pursuant to Subsection H of this Section may be approved by the carrier/self-insured employer within 10 calendar days of the request for authorization as indicated on the LWC-WC-1010. The approval will be indicated in Section 3 of LWC-WC-1010. The medical director shall dismiss any appeal that may have been filed by a LWC-WC-1009. The carrier/self-insured employer shall be given a presumption of good faith regarding the decision to change the denial to an approval provided that the LWC-WC-1010 which indicates "approved" in Section 3 is faxed or emailed within 10 calendar days of the request for authorization.

24

J. Review of denial, approved with modification, deemed denied, or variance by LWC-WC-1009.

1. Any aggrieved party who disagrees with a request for authorization that is denied, approved with modification, deemed denied pursuant to Paragraphs E.2, F.5, and Subsection H, or who seeks a determination from the medical director with respect to medical care, services, and treatment that varies from the medical treatment schedule shall file a request for review with the OWC. The request for review shall be filed within 15 calendar days of:

a. receipt of the LWC-WC-1010 by the health care provider indicating that care has been denied or approved with modification; or

b. the expiration of the fifth business day without response by the carrier/self-insured employer pursuant to Paragraphs E.2, F.5, and Subsection H of this Section.

2. The request for review shall include:

a. LWC-WC-1009 which shall state the reason for review is either;

i. a request for authorization that is denied; or

ii. a request for authorization that is approved with modification; or

iii. a request for authorization that is deemed denied pursuant to Paragraphs, E.2, F.5, and Subsection H; or

iv. a variance from the medical treatment schedule is warranted; and

b. a copy of LWC-WC-1010 which shows the history of communications between the health care provider and the carrier/self-insured employer that finally resulted in the request being denied or approved with modification; and

c. all of the information previously submitted to the carrier/self-insured employer; and

d. in cases where a variance has been requested, the health care provider or claimant shall also provide any other evidence supporting the position of the health care provider or the claimant including scientific medical evidence demonstrating that a variance from the medical treatment schedule is reasonably required to cure or relieve the claimant from the effects of the injury or occupational disease given the circumstances.

3. In cases where the requested care, services, or treatment are not covered by the medical treatment schedule pursuant to R.S. 23:1203.1(M):

i. the health care provider may also submit with the LWC-WC-1009 the documentation provided to the carrier/self-insured employer pursuant to Paragraph G.2 of this Section; and

ii. the carrier/self-insured employer may submit to the medical director within five business days of receipt of the LWC-WC-1009 from the health care provider or claimant the documentation used to deny or approve with modification the request for authorization pursuant to R.S. 23:1203.1(D). A copy of the information being submitted to the medical director must be provided by fax or email to the health care provider and claimant attorney, if any, and on the same business day to the claimant by regular mail at his last known address.

4. The health care provider or claimant filing the LWC-WC-1009 shall certify that such form and all supporting documentation has been

sent to the carrier/self-insured employer by email or fax. The OWC shall notify all parties of receipt of a LWC-WC-1009.

5. a. Within five business days of receipt of the LWC-WC-1009 from the health care provider or claimant, the carrier/self-insured employer shall provide to the medical director, with a copy going to the health care provider or claimant attorney, if any, via fax or email and on the same business day to the claimant via regular mail at his last known address, any evidence it thinks pertinent to the decision regarding the request being denied, approved with modification, deemed denied, or that a variance from the medical treatment schedule is warranted.

b. The medical director shall within 30 calendar days of receipt of the LWC-WC-1009, and consideration of any medical evidence from the carrier/self-insured employer if provided within such five business days, render a decision as to whether the request for authorization is medically necessary and is:

i. in accordance with the medical treatment schedule: or

ii. in accordance with R.S. 23:1203.1(D) if such request is not covered by the medical treatment schedule, or

iii. whether the health care provider or claimant demonstrates by a preponderance of the scientific medical evidence that a variance from the medical treatment schedule is reasonably required. The decision of the medical director shall be provided in writing to the health care provider, claimant, claimant's attorney if one exists, and Carrier/Self-Insured Employer.

c. The decision of the medical director shall include:

i. the date the decision is mailed; and

ii. the name of the employee; and

iii. the date of accident; and

iv. the decision of the medical director; and

v. the clinical rational to include a summary of the medical information reviewed; and

vi. the criteria applied to make the LWC-WC-1009 decision.

K. Appeal of 1009 Decision by Filing 1008

1. In accordance with LAC 40:I.5507.C, any party feeling aggrieved by the R.S. 23:1203.1(J) determination of the medical director shall seek a judicial review by filing a Form LWC-WC-1008 in a workers' compensation district office within 15 calendar days of the date said determination is mailed to the parties. The filed LWC-WC-1008 shall include a copy of the LWC-WC-1009 and the decision of the medical director. A party filing such appeal must simultaneously notify the other party that an appeal of the medical director's decision has been filed. Upon receipt of the appeal, the workers' compensation judge shall immediately set the matter for an expedited hearing to be held not less than 15 calendar days nor more than 30 calendar days after the receipt of the appeal by the office. The workers' compensation judge shall provide notice of the hearing date to the parties at the same time and in the same manner. The decision of the medical director may only be overturned when it is shown, by clear and convincing evidence that the decision was not in accordance with the provisions of R.S. 23:1203.1.

\* \* \*

26

In accordance with La. R.S. 23:1203.1, the OWC has also promulgated medical treatment guidelines, procedures, and reimbursement schedules in La. Admin. Code, Title 40, Part I, Subpart 2 (Medical Guidelines), §§ 2001 - 5399, addressing specific bodily injuries and specific medical treatments, in depth.

In accordance with La. R.S. 23:1203.2, the OWC has also promulgated an electronic medical billing and payment system in La. Admin. Code, Title 40, Part I, Subpart 1 (General Administration), Chapter 3 (Electronic Billing), §§301 - 319;[12] these regulations incorporate acknowledgement and response procedures for employer/payors, including as stated in Section 306(A)(2)(b) to "report explanations of payments, reductions, and denials to the health care provider, health care facility, or third-party biller/assignee."[13]

Section 309(A)(2) states: "Unless exempted from this process in accordance with Subsection B of this Section, insurance carriers or their agents shall: a. accept electronic medical bills submitted in accordance with the adopted standards; b. transmit acknowledgments and remittance advice in compliance with the adopted standards in response to electronically submitted medical bills; and c. support methods to receive electronic documentation required for the adjudication of a bill, as described in Section 315 of this Chapter." Section 309(A)(6) further provides: "Health care providers who elect not to utilize electronic medical billing pursuant to Section 305.A.1 of this Chapter shall submit paper medical bills for payment . . . ." Section 309(D)(4) requires that "[a]n insurance carrier must acknowledge receipt of an electronic medical bill by returning an implementation acknowledgment (ASCX12N999) within one business day of receipt of the electronic submission."

---

[12] See also La. Admin. Code, Title 40, Part I, § 2915 (providing additional "billing instructions" for prescription medications).

[13] See also La. Admin. Code, Title 40, Part I, §306(G)(6) ("The 005010X221A1 transaction supports the use of remittance advice remark codes to provide supplemental explanations for a payment, reduction, or denial already described by a claim adjustment reason code.").

In addition, Paragraph (F) of Section 309 requires the payor to respond to a claim for payment with a "remittance notification," within one business day of the payment or denial, which contains "an explanation of medical benefits (EOMB) or explanation of review (EOR) . . . regarding payment or denial of a medical bill"; the remittance notification "must contain the appropriate group claim adjustment reason codes, claims adjustment reason codes (CARC) and associated remittance advice remark codes (RARC) as specified by ASC X12 835N implementation guide or for pharmacy charges, the National Council for Prescription Drugs Program (NCPDP) reject codes, denoting the reason for payment, adjustment, or denial."

Section 311 authorizes a payor or its agent to request additional documentation from a health care provider, as may be "relevant and necessary for the resolution of the bill" and "specific to the . . . bill's related episode of care," including medical records and reports, pursuant to Section 315. Paragraph (H) of Section 311 requires that "[p]ayment of all uncontested portions of a complete medical bill shall be made within 30 calendar days of receipt of the original bill, or receipt of additional information requested by the insurance carrier allowed under the law," and states that "[a]mounts paid after this 30 calendar day review period shall be subject to R.S. 23:1201(F)."

Section 313 requires communications related to medical bill processing to be of "sufficient specific detail" to allow the easy identification of the information required to resolve the issue or question related to the medical bill; the "[u]tilization of the ASC X12N Reason Codes, or as appropriate, the NCPDP Reject Codes" are authorized as a "standard mechanism to communicate issues associated with the medical bill." Further, Section 313(C) allows communication between the health care provider and payor, related to medical bill processing, by telephone, electronic transmission, by mail, or personal delivery.

Payors who fail to comply with Sections 309, 311, or 313 may be subject to

"an administrative violation" under La. Admin. Code, Title 40, Part I, § 109(A) (which authorizes a non-compliance penalty of "a fine not to exceed $500").

In addition to the foregoing, the Legislature has taken steps, in La. R.S. 23:1034.2, to control the cost of medications and other medical supplies. In La. R.S. 23:1034.2, the Legislature directed the OWC to "establish and promulgate a reimbursement schedule for drugs, supplies, hospital care and services, medical and surgical treatment . . . applicable to any person or corporation who renders such care, services, or treatment or provides such drugs or supplies to any person covered by [the Workers' Compensation Law] . . . in accordance with the Administrative Procedure Act," and stated that the reimbursement schedule should "include charges limited to the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies."

The reimbursement regulations for prescription medications are found in La. Admin. Code, Title 40, Part I, §2905, §2907, §2909, and §2915. With respect to the cost of medications, Section 2907 provides:

> A. Payment for brand-name pharmaceuticals including oral non-legend drugs will be made at the lesser of:
> 1. the provider's usual charge;
> 2. a provider/insurer contracted charge; or
> 3. the average wholesale price (AWP) plus 10 percent plus a dispensing fee equal to the Medicaid dispensing fee set by the state of Louisiana, Department of Health and Hospitals.
> B. Payment for generic pharmaceuticals will be made at the lesser of:
> 1. the provider's usual charge;
> 2. a provider/insurer contracted charge; or
> 3. the average wholesale price (AWP) plus 40 percent, plus a dispensing fee equal to the Medicaid dispensing fee set by the state of Louisiana, Department of Health and Hospitals.
> C. The average wholesale prices (AWPs) for brand-name and generic pharmaceuticals will be the AWP listed in the most recent monthly update of the Annual Pharmacists' Reference Red Book available from:
> Medical Economics Company, Inc.
> 680 Kinderkamack Road
> Oradell, NJ 07649
> Phone (800) 526-4870
> D. Compounded prescriptions will be paid utilizing the same

29

reimbursement formula as generic drugs. Please write "COMPOUND RX" directly above the RX# field on the Drug Claim Form.

E. When not in conflict with physician's orders and/or when not contrary to stop orders, medications should be dispensed in quantities sufficient to last 30 days except pharmaceuticals which could be considered "one-a-day, long-term maintenance" drugs, which may be dispensed in 100 unit dose quantities.

F. Refills will be permitted on an original prescription for a period of not more than one year from the date of such prescription, subject to applicable laws and regulations and only in accordance with the authorization of the prescribing physician.

Section 2909 further provides that a workers' compensation insurer will not be required to make payment for: (1) over-the-counter (OTC) drugs and supplies unless prescribed by the treating physician of record; (2) drugs or disposable needles and syringes dispensed while a patient in a hospital, nursing home, or other institution; (3) experimental or investigative drugs which have not been approved by FDA; (4) vitamins, vitamin injections, or vitamin therapy of any kind; (5) diet pills or drugs for the purpose of weight reduction unless the treating physician can provide prior justification; (6) charges for any prescription, or item of merchandise or service, not related to the qualifying illness or injury; (7) pharmacy charges incurred in conjunction with non-work related conditions; or (8) items or services which are furnished gratuitously without regard to the individual's ability to pay, and without expectation of payment from any source.

Further, regulations governing the commencement of claims before the OWC are found in La. Admin. Code, Title 40, Part I, §5507, et seq. Also, a request for a preliminary determination, under La. R.S. 23:1201.1, is addressed in La. Admin. Code, Title 40, Part I, §5507(D). Forms promulgated by the OWC can be found at La. Admin. Code, Title 40, Part I, §6629, et seq. and at www.laworks.net,[14]

---

[14] See also La. Admin. Code, Title 40, Part I, §5809 ("The Office of Workers' Compensation Administration shall prepare and adopt such forms for use in matters before the Office of Workers' Compensation Administration as it may deem necessary or advisable. Whenever Office of Workers' Compensation Administration *forms* are prescribed and are applicable, they *shall be used*. A photo ready copy of any form may be procured upon request to any district office, the office of the director, or from the website, www.laworks.net.") (emphasis added).

including the "Notice of Payment, Modification, Suspension, Termination or Controversion of Compensation or Medical Benefits" form (used for compliance with La. R.S. 23:1201.1), which can be also be found in La. Admin. Code, Title 40, Part I, §6631;[15] and Forms LWC-WC-1010[16] and FLWC-WC-1010A,[17] referenced in La. Admin. Code, Title 40, Part I, §§ 2715 and 2718.

A simplified explanation, for the benefit of employers and employees, of how medical benefit claims are made and processed under the statutory laws and regulatory rules and regulations, is posted on the OWC website,[18] stating as follows:

> An employee has the right to select one doctor of his or her choice in each specialty field for treatment of the job-related injury. The employer or its workers' compensation insurer is required to pay all approved necessary expenses for medical treatment and all reasonably and necessarily incurred travel to obtain treatment. Medical benefits payable under the Louisiana Workers' Compensation Act shall be paid within 30 days after the employer or its workers' compensation insurer receives written notice thereof, or within 60 days if the provider of medical services is not utilizing the electronic billing rules and regulations provided for in R.S. 23:1203.2. An itemized list of out of pocket medical expenses and receipts paid by the employee should be sent to the employer or its workers' compensation insurer for reimbursement.
>
> Any non-emergency medical services over $750 and any non-emergency hospitalization must be pre-approved by the employer or its workers' compensation insurer. The healthcare provider seeking authorization to exceed the $750 statutory limit for medical services must submit a request for such authorization to the employer or its workers' compensation insurer on an Form LWC-WC 1010 (Request of Authorization/Carrier or Self Insured Employer Response). The Form LWC-WC 1010 and all supporting medical documentation are to be faxed to the employer or its workers' compensation insurer and/or the designated utilization review representative. Within five business days of receipt of the Form LWC-WC 1010 and the supporting documentation from the healthcare provider, the employer or its workers' compensation insurer will issue a response of either approval, denial, or approval with modification of the requested treatment on the Form LWC-WC-1010 and return the form to the requesting healthcare provider. Failure to act on behalf of the employer or its workers'

---

[15] Available at http://www.laworks.net/Downloads/OWC/1002form.pdf.

[16] Available at http://www.laworks.net/Downloads/OWC/1010form.pdf.

[17] Available at http://www.laworks.net/Downloads/OWC/1010Aform.pdf.

[18] Available at http://www.laworks.net/FAQs/FAQ_WorkComp_RightsAndResponsibilities.asp.

compensation insurer within five business days of receipt of the Form LWC-WC 1010 will be deemed a tacit denial of the request for treatment and this denial may be reviewed by the OWCA Medical Director.

The employer or its workers' compensation insurer and/or utilization review representative may initiate the Form LWC-WC-1010A (First Request) when the medical documentation submitted with the Form LWC-WC-1010 does not sufficiently provide the necessary information to complete the review of the requested medical services. The healthcare provider must then respond to the request for additional information within 10 business days from receipt of the Form LWC-WC-1010A. Failure to act on behalf of the healthcare provider within the 10 business days of receipt of the Form LWC-WC 1010A will be deemed a tacit withdrawal of the request for authorization of treatment.

Any request for review by the OWCA Medical Director shall be filed on a Form LWC-WC 1009 (Disputed Claim for Medical Treatment). The Form LWC-WC 1009 must be filed within 15 calendar days of the date of denial by the employer or its workers' compensation insurer or the date the denial is received. A copy of the completed Form LWC-WC 1009 must be mailed to all involved parties.

The Form LWC-WC 1009 must be accompanied by a copy of the Form LWC-WC 1010 (and Form LWC-WC 1010A, if applicable), a copy of the peer review denial from the employer and/or its workers' compensation insurer, and a copy of the medical records substantiating the medical necessity of the requested treatment. Any incomplete Form LWC-WC 1009 or a completed Form LWC-WC 1009 that is not submitted with the supporting documentation will be rejected and returned to the requesting party.

Within 30 days after receipt of the Form LWC-WC 1009 and supporting documentation, the OWCA Medical Director will determine whether the treatment prescribed by the healthcare provider is in accordance with the Louisiana Workers' Compensation Medical Treatment Guidelines. Any party feeling aggrieved by the determination of the OWCA Medical Director shall seek a judicial review by filing a Form LWC-WC-1008 (Disputed Claim for Compensation) with the appropriate OWCA district office within 15 days of the date of said determination is mailed to the parties. The filed Form LWC-WC-1008 shall include a copy of the Form LWC-WC 1009, and a copy of the determination of the OWCA Medical Director. A party filing such appeal must simultaneously notify the other party that an appeal of the medical director's decision has been filed. The determination of the OWCA Medical Director may be overturned if it is shown by clear and convincing evidence that the determination was not in accordance with the provisions of the Louisiana Workers' Compensation Medical Treatment Guidelines.

If the foregoing exhaustively detailed statutes, rules, and regulations are followed, there would be no need for courts to adjudicate whether an injured employee or the employer/payor has the right to choose a health care provider for diagnostic testing and treatment of the employee, since the OWC claim submission,

approval, and dispute resolution procedures set forth are sufficient to resolve any issues that might arise. Therefore, I believe this court should revisit its holding **Burgess v. Sewerage & Water Board of New Orleans**.

In any event, in the instant case, it does not appear that Wal-Mart followed the promulgated procedures relative to termination of a plaintiff's previously-approved pharmaceutical provider and, for that reason alone, judgment in favor of Wal-Mart is inappropriate.

More troubling than this court's granting an exception of prematurity contrary to law is its failure to recognize the very real and present conflict of interest. Pharmacists are required to know all drugs a patient is prescribed in order to avoid any harmful interactions. A patient may be taking prescribed medication for a sensitive medical issue (hepatitis C or AIDS, just as an example) that has nothing to do with a work related injury. This is private medical information the patient may not want her employer to have, much less one with whom she is in the middle of litigation.

The court of appeal got it right and should be affirmed.

SUPREME COURT OF LOUISIANA

NO. 2019-C-0040

ELIZABETH SOILEAU

VERSUS

WAL-MART STORES, INC.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, OFFICE OF WORKERS' COMPENSATION,
DISTRICT 4

**GENOVESE, J.,** dissents and assigns the following reasons.

The true legal question in this workers' compensation case is whether the employer can designate itself as the pharmacy to fill its injured employee's prescription. The majority sloughs off the issue on the grounds of prematurity, claiming no justiciable controversy in that there is an "absence of any claim that the employee had not been furnished proper medical attention or that there have been delays or deficiencies in filling prescriptions."

In 2016, the employee obtained a judgment against her employer ordering that she was entitled to receive certain prescriptions that were prescribed by her physician. Thus, the employee began filling her prescriptions at Falcon Pharmacy. Following this court's opinion in *Burgess v. Sewerage & Water Board of New Orleans*, 16-2267 (La. 6/29/17), 225 So.3d 1020 (in which I strongly dissented), which held the choice of pharmacy belongs to the employer, the employer in this case notified the employee in writing that she could only use "a Wal-Mart or Sam's Club Pharmacy" for her future prescription needs. The employee responded by filing a Motion to Compel due to the employer's refusal to approve or authorize medications anywhere other than "Wal-Mart."

Rhetorically, just what more must the employee do to join the issue — go back to Falcon Pharmacy and be rejected, or go to any other drugstore, other than Wal-Mart or Sam's, and be rejected (not to mention the concomitant embarrassment and humiliation accompanying such a rejection)?

How can it be said that nothing in the employee's Motion to Compel "alleges that Wal-Mart refused to furnish Ms. Soileau with the proper medical attention, as required by La.R.S. 23:1314"? Proper medical attention is allowing the employee to obtain her medication. However, the employer represented to its employee that she go to its drug chain or else. To allow such under the guise of our workers' compensation law is to place the proverbial "fox in the henhouse." Not everyone kowtows to Wal-Mart. Wal-Mart and/or Sam's is a nationwide discount chain store. Understandably, there are those that care not to be funneled into discount prescription drugs for the treatment of their injuries incurred while serving his/her employer. The employee here is one of those.

It is difficult enough for an employee having to deal with *Burgess*, where the employee cannot chose its pharmacy (in which I strongly disagree); now, the employee has to succumb to its employer's pharmacy. Forcing an employee to use its employer as a pharmacy creates a conflict, as stated by the court of appeal. The employee is trapped within. It is like being a guest at the Hotel California: "You can check out, but you can never leave." The employee is bound in the compound.

There is no prematurity here. The issue has been squarely presented, and now the employee is the indentured servant of his/her employer. The employee needs her medication, and the employer will not allow it, unless the employee goes to its own pharmacy. Is that really the way workers' compensation is supposed to work? The court of appeal got it right, and I would affirm the court of appeal.